United States Court of Appeals,

Eleventh Circuit.

No. 94-8481.

Pamela D. YOUNG, Plaintiff-Appellant,

v.

AUGUSTA, GEORGIA, CITY OF, Through its Mayor Charles DeVANEY, in his official capacity, and its council members, et al., Defendants-Appellees.

July 28, 1995.

Appeal from the United States District Court for the Southern District of Georgia. (No. CV191-215), Dudley H. Bowen, Jr., Judge.

Before HATCHETT, Circuit Judge, HENDERSON, Senior Circuit Judge, and YOUNG[*], Senior District Judge.

HENDERSON, Senior Circuit Judge:

Pamela D. Young appeals from the judgment entered in the United States District Court for the Southern District of Georgia granting the motion for summary judgment filed by the City of Augusta, Georgia (the City) in her 42 U.S.C. § 1983 municipal liability action and dismissing her pendent state law claims.[1]

---

[*]Honorable George C. Young, Senior U.S. District Judge for the Middle District of Florida, sitting by designation.

[1]Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

A local city government is a "person" that can be sued within the meaning of § 1983. *Monell v. Department of Social Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611, 635 (1978).

After a review of the record, we conclude that genuine issues of material fact remain in the case.  We therefore reverse and remand for further proceedings.

## I. BACKGROUND

In July 1989, Young, who was eighteen years old at the time and afflicted with a manic-depressive disorder,[2] was arrested for stealing a package of cigarettes at a local grocery store.  She was thereafter found guilty of misdemeanor theft and was sentenced to pay a $500.00 fine or to serve ninety days in the City jail.  Unable to pay the fine, Young was faced with service of the jail sentence.  Prior to being transported to the jail, she was placed in a holding cell adjacent to the courtroom, where she removed her underwear and shoes and set them on fire.  This led to another charge for destruction of City property as a result of the damage to the cell.  The next day, she pleaded guilty to that offense and was again sentenced to a $500.00 fine or ninety days in jail.

Young filed this action on October 10, 1991, alleging, *inter alia,* that, during her imprisonment, jail officials were deliberately indifferent to her serious medical needs in violation of the Eighth Amendment to the United States Constitution, giving rise to a cause of action under the authority of § 1983.[3]  She also

_____

[2]Manic-depression is an affective psychosis characterized by extreme and pathological elation alternating with severe dejection.  8 McGraw-Hill Encyclopedia of Science & Technology 114 (5th ed. 1982).

[3]The complaint also invoked the First, Fifth and Fourteenth Amendments as providing grounds for relief, as well as 42 U.S.C. § 1985(3), which prohibits conspiracies to deprive persons of their civil rights.  The only cognizable federal cause of action implicated by the allegations of the complaint, however, is one under § 1983 for possible violations of the Eighth Amendment,

contended that her treatment at the jail ran afoul of Georgia law. Young sought damages, attorneys fees and unspecified injunctive relief. The complaint named as defendants the City, through its Mayor and City Council members, the Chief of Police, Freddie Lott, and Bobbie Jean Gentle, a guard at the jail. Because Young failed to serve Lott and Gentle with process, they were never made parties to the lawsuit. Consequently, this appeal is confined to only those allegations of the complaint as they relate to the liability of the City.

The evidence gleaned from the record construed in the light most favorable to Young[4] discloses that her father informed "one or more persons associated with the Augusta judicial system" that she was manic-depressive and requested that she be allowed to serve any jail time imposed at the Georgia Regional Hospital at Augusta. ("Georgia Regional") (R1-5 at 1). Instead, on August 15, 1989, she was taken to the City jail. Although Young had been treated for psychiatric and behavior problems during various periods since she was fourteen years old, at the time of her arrest and initial incarceration she was not being treated by a doctor and was not taking medication.

Young's stay at the jail apparently was uneventful until September 6, when she was transported to the University Hospital

---

made applicable to the states through the Fourteenth Amendment.

[4]Because this case involves the grant of summary judgment, we view the evidence and all inferences arising therefrom in the light most favorable to the nonmoving party. *James v. City of St. Petersburg, Fla.,* 33 F.3d 1304, 1306 (11th Cir.1994) (en banc).

emergency room because of complaints of abdominal pain.[5]  On September 11, she was returned to the emergency room because of violent behavior.  She was subsequently transferred to Georgia Regional for a psychiatric evaluation, where it was determined that she would not pose a danger to herself or others if she were returned to the jail.  However, by September 13, Young was in an overtly psychotic state and in need of hospitalization.  She was admitted that day to Georgia Regional and psychotropic medication was prescribed for her.  She was released to the jail on September 21, with a warning that she might continue to act out or make suicidal statements.  A letter written by Eloise Hayes, D.O., advised that Young was manipulative and could pose a danger to herself.  The letter instructed that if she engaged in such behavior, she should be placed in a stripped cell.  On October 1, Young was examined at the emergency room again for possible lithium toxicity.[6]  Upon her release, jail officials were instructed to withhold the drug until they were advised of test results.  The record does not contain evidence of those results or show whether

---

[5]In its motion for summary judgment, The City claimed that prior to this emergency room visit, Young underwent a psychiatric evaluation pursuant to a court order.  It produced a copy of the court's order dated August 23, 1989 in support of this statement, but failed to offer any evidence showing that Young was actually checked by a medical professional or the results of the alleged examination.  The City also contended Young received medical treatment on September 7, 1989, but again, there is no proof of this allegation in the record.

[6]Lithium is a drug prescribed during manic episodes of manic-depressive illness.  Physician's Desk Reference 2304 (47th ed. 1993).

they were passed on to jail officials.[7]

On October 3, Young told a guard she was hearing voices. In response to this information, she was placed in an isolation cell, which she attempted to flood, thereby wetting her clothes. She was then stripped naked and chained to the metal bed, which contained no mattress. She was shackled in such a way that she could not reach the toilet and was forced to eliminate her bodily wastes where she sat on the floor. When a meal was served, she threw it against the wall. While in isolation, Young, in a delusional state, repeatedly banged on the door, which resulted in her being sprayed with mace by both male and female guards.[8] She was confined in this manner, naked and chained to the bed amid filth and excrement and subjected to macings until October 6, when she was provided with clothes, allowed to take a shower and her cell was finally cleaned by another inmate. The next day she was taken to the Augusta Area Mental Health Clinic and then to Georgia Regional Hospital, where she was treated for her mental disorder with shots and medication. She was returned to the jail on October 10, but continued to receive psychotropic medication.[9]

---

[7]Handwritten activity notes show that Young was examined also at the Augusta Area Mental Health Clinic on October 2, 16 and 20. What, if any, treatment she received is not discernible from the notes.

[8]Young also testified that she was maced by guards on various other occasions while being escorted to and from the shower.

[9]Young's claim regarding the course of medication she received during her imprisonment is somewhat vague and conflicting. In her answers to interrogatories, she states that she received no medicine between August 16 and September 30. (R1-5, Answer to Interrogatory 1, ¶ 6). She also admits, however, and the record shows, that she was medicated as an

Nevertheless, on November 3, she informed a guard that she again was hearing voices. As before, she was placed in an isolation cell, which she proceeded to flood and which resulted in her being handcuffed to the bed. A short time later, she engaged in a verbal altercation with one of the guards, Bobbie Jean Gentle. The confrontation escalated into a physical assault during which Gentle struck Young in the eye with her fist. Gentle continued to beat Young, who was still shackled to the bed, until other jailers intervened. Later that day Young was again taken to the Augusta Area Mental Health Clinic and then to Georgia Regional, where she was admitted for treatment. She remained there until November 17, when she was released to her family.

In her charges of municipal liability, Young alleges that the City failed to adequately select or train jail personnel to deal with inmates suffering from mental illness, or to provide on-site medical treatment. Because of these deficiencies, she contends, treatment for her psychiatric condition was delayed until it reached emergency proportions. Although not alleged directly,

---

inpatient at Georgia Regional from September 13 through September 21. (R1-29, Answer to Interrogatory 24; R1-19, Exhibits D-1 and D-2). She contends that after medications were prescribed for her, "the City did not give them at prescribed times. They were only given at medication time[,]" (R1-29, Answer to Interrogatory 24), and that, after her release from the hospital on September 21, she was "given medications, perhaps not as scheduled ... until they ran out on approximately October 2, 1989, after which time [the] receipt of medication was even more sporadic[,]" (R1-29, Answer to Interrogatory 1, ¶ 17). She states in her complaint and in answers to interrogatories that between October 10 and November 2 "she was given medication every day, three times a day, Haladol and Lithium." (R1-3, Complaint at ¶ 30; R1-5, Answer to Interrogatory 1, § 9). We can only construe these statements as meaning that there were periods of time during her imprisonment when jail officials failed to dispense her medicines as prescribed.

implicit in the complaint also is the claim that the brutality to which she was subjected in the isolation cell from October 3 through October 6, the macings and the beating she received from Gentle, were the result of inadequate training of jail personnel.

The City moved for summary judgment urging that (1) the portions of the complaint concerning events occurring between August 15, 1989 and October 10, 1989 were barred by the statute of limitations; (2) the state law claims were foreclosed because of Young's failure to provide the notice required by O.C.G.A. § 36-33-5 (mandating that notice of claims against municipal corporations be presented to the municipality for possible settlement within six months of the alleged wrongful conduct); and (3) her damages were not caused by a custom, practice or policy of the City. In support of the motion, the City submitted the affidavit of Lena J. Bonner, the custodian of the records of the City Council, who stated that no evidence existed to show that Young had served the City with the aforementioned notice required by Georgia law. In addition, the City proffered the affidavit of M. James Cullinan, identified as "the official in charge of the City of Augusta Jail." (R1-19 at ¶ 2). Cullinan attested, *inter alia,* as follows:

> 3. At all relevant times the City of Augusta Jail employed a nurse who was charged with treating minor medical problems and directing non-minor problems to the appropriate medical facility and personnel.

> 4. According to the policy and procedures of the City Jail, medical attention is available at all times when emergencies occur. Emergencies are defined as medical conditions which appear to require immediate attention and are not limited to severe or life threatening conditions. Inmates in need of care are immediately transported to University Hospital and its clinics.

> 5. The staff at the City Jail is and has been at all

pertinent times instructed and trained to respond promptly to any report of a medical need by an inmate and further trained that when in doubt, the inmate must be transported to the hospital. It is and has been at all relevant time [sic] the practice of the City jail to consistently provide prompt and adequate medical care to the inmates.

6. The staff of the City Jail not only receives initial training pertaining to medical needs of inmates at the time of employment but they also receive continuing education and training of at least four hours per month with regard to such matters.[ ]

7. Such training specifically emphasizes the necessity for all City Jail personnel to be alert to inmates' medical needs and to respond to medical needs by providing prompt care.

8. At all relevant times, City Jail personnel have also been trained to be aware of inmates' psychiatric needs. They are trained to observe the inmates' behavior and to report unusual behavior to the nurse, University Hospital physicians and to personnel at the Augusta Area Mental Health Clinic. Observations and reports are according to national guidelines which are contained in a standard form.

9. During the time period referred to in Plaintiff's Complaint, City Jail personnel were trained and had been trained to follow orders and directions from physicians and psychologists and to transport inmates to the appropriate facility for psychiatric treatment or observation as necessary.

10. During said time period, City Jail personnel were trained and had been trained to detect potential suicidal behavior and take immediate action.

11. Procedures have been in place at all pertinent times to provide medication to inmates pursuant to physicians' orders to ensure that inmates take them as prescribed regardless of whether such medication was prescribed prior to their incarceration or during their stay at the City Jail.

....

26. On each and every occasion when Plaintiff acted out or otherwise appeared to require medical care either (physical or mental) Plaintiff was promptly delivered to the appropriate medical authority.

27. Jail personnel followed orders and recommendations of medical authorities at all times.

(R1-19 at WW 3-11, 26-27). Cullinan also asserted that it is

against jail policy to keep an inmate naked for longer than it takes to provide dry clothes and to use mace, except when needed to prevent injury by an out-of-control prisoner. (*Id.* at WW 21-22). Cullinan stated further that he immediately terminated Gentle's employment when he learned of her fracas with Young. (*Id.* at ¶ 25). Portions of the record of Young's medical treatment, jail medication charts and excerpts from testimony she gave during a deposition were also submitted as evidence in support of the City's motion for summary judgment. In its brief to the district court, the City argued that, assuming, without conceding, that Young's constitutional rights were violated by jail employees, such conduct was in contravention of, rather than caused by, City policy.[10]

In opposition to the motion for summary judgment, Young filed a brief in which she purported to incorporate arguments made by the plaintiff in another case pending in the same district court, *Arnold v. City of Augusta, Ga.,* Civil Action No. CV 191-177, in response to the City's motion for summary judgment filed in that case.[11] Young also cited to her answers to interrogatories and her

---

[10]An officially promulgated written policy concerning inmate medical care and personnel training, if one exists, was not made a part of the record.

[11]Young's attorney, John P. Batson, also represents the plaintiff in *Arnold,* who was incarcerated at the City jail during approximately the same time period as Young. Like Young, Arnold contends that, because of a City policy or practice, jail officials were deliberately indifferent to his serious mental health needs. We take judicial notice of the fact that the district court denied the City's motion for summary judgment filed in *Arnold. See United States v. Jones,* 29 F.3d 1549, 1553 (11th Cir.1994) (a court may take notice of another court's order for the limited purpose of recognizing the judicial action taken or the subject matter of the litigation). It thereafter ordered that the case be closed for statistical purposes pending the outcome of the present appeal.

entire deposition testimony as evidence in opposition to the motion for summary judgment. In addition, she contended that the statute of limitations for filing the action was tolled for fifty-seven days during periods when she was hospitalized in 1991 and submitted her affidavit and that of her attorney in support, as well as portions of her medical record. Finally, she requested that she be allowed to "subpoena witnesses and cross-examine them for purposes of responding to the Motion for Summary Judgment should there be any doubt as to the existence of material facts in dispute." (R1-20, ¶ 3). In a separate motion for a hearing she stated that she could not "afford other processes of discovery by which to respond to the Defendants' Motion for Summary Judgment."[12] (R1-23).

In ruling on Young's motion for a hearing the magistrate judge to whom certain pretrial matters were assigned, *see* 28 U.S.C. § 636(b)(1)(A),[13] acknowledged that oral testimony at the summary judgment stage may be warranted in some limited circumstances. He found this unusual step to be unnecessary in the present case, however. The magistrate noted that Young had personal knowledge of her treatment at the jail and thus, could oppose the City's motion by way of her own affidavit without incurring the expense of deposing the City's witnesses. He therefore denied the motion for a hearing to elicit oral testimony and advised Young to submit an

---

[12]Young filed this action *in forma pauperis.*

[13]Section 636(b)(1)(A) permits a district court judge to designate a magistrate to determine any pending pretrial matter, except certain enumerated types of motions, including motions for summary judgment. Because the motion for a hearing to present oral testimony was not dispositive of the motion for summary judgment, the court acted within its authority in delegating this request to the magistrate.

affidavit containing factual information known to her for the district court's consideration. He also instructed Young to request a hearing to present oral argument if necessary.

Young did not submit an affidavit, nor did she move for oral argument. Instead, she asked the court to appoint an expert, as authorized by Fed.R.Evid. 706, to assist it in its determination of the motion for summary judgment. In a brief in support thereof, she urged that the testimony of a psychiatric expert was necessary to prove that the medical treatment afforded to her by jail personnel was deliberately indifferent. In addition, she asked the court to consolidate her case with the *Arnold* case, as permitted by Fed.R.Civ.P. 42(a), on the ground that the actions involved common issues of law and fact. The magistrate judge denied both of Young's motions, after which, she offered nothing further in opposition to the City's motion for summary judgment.

In ruling on the motion for summary judgment, the district court found that Cullinan's affidavit was sufficient to rebut Young's contention that a City policy or procedure caused her damages. The court additionally found that the affidavits concerning the statute of limitations, which Young submitted in opposition to the City's motion, did not contradict any of Cullinan's averments regarding the jail's policy with respect to inmates' medical care. The court consequently held that the City was entitled to judgment as a matter of law on the § 1983 cause of action. In view of this disposition, the court declined to address the statute of limitations issue. Nor did the court reach the City's argument that the state law claims were barred under

O.C.G.A. § 36-33-5. Instead, it opted to dismiss them in view of the dismissal of the federal claims. *See* 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction where all claims over which it had original jurisdiction have been dismissed).[14]

On appeal, Young maintains it was error to deny her motions for appointment of a mental health expert, for a hearing to present oral testimony and to consolidate her case with *Arnold.* To facilitate a determination of whether the magistrate judge abused his discretion by denying the motion to consolidate, Young requests that we supplement the record on appeal with the record in the *Arnold* litigation. Young also challenges the district court's finding that Cullinan's affidavit was sufficient to carry the City's burden of proof.[15]

## II. DISCUSSION

A. *Motion to supplement the record on appeal.*

Young's motion to supplement the record on appeal was carried with the case and therefore requires our initial attention. Generally, a reviewing court will not consult the evidence or

---

[14]Because no findings were made by the district court on the viability of the statute of limitations or state law notice defenses, we confine our inquiry to the question of whether the record contains a genuine issue of material fact with respect to § 1983 municipal liability.

[15]Young complains that the district court failed to evaluate all of the evidence of record, including her answers to interrogatories and deposition testimony. Although the district court did not refer to this evidence in its order granting summary judgment to the City, we cannot say that the court failed to consider it. In light of our duty to conduct a plenary review of the grant of summary judgment, we have taken this evidence into account.

record of another case if it was not first considered in the district court, although it has that power. *See Jones v. White,* 992 F.2d 1548, 1566-68 (11th Cir.) (invoking the court's inherent equitable powers to supplement the record on appeal), *cert. denied,* --- U.S. ----, 114 S.Ct. 448, 126 L.Ed.2d 381 (1993), and --- U.S. ----, 114 S.Ct. 727, 126 L.Ed.2d 691 (1994). This court has not articulated a particular test to make that determination. Rather, we review such requests on a case-by-case basis. *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1555 (11th Cir.1989); *Ross v. Kemp,* 785 F.2d 1467, 1474 (11th Cir.1986). Factors we have considered in deciding to grant a motion to supplement include whether the additional material would be dispositive of pending issues in the case and whether interests of justice and judicial economy would thereby be served. *Ross,* 785 F.2d at 1475. However, these are only guidelines for exercising our discretion. Even when the added material will not conclusively resolve an issue on appeal, we may allow supplementation in the aid of making an informed decision. *Cabalceta,* 883 F.2d at 1555.

With these considerations in mind, we grant Young's motion to supplement the record on appeal, in part. Young's proffer of certain portions of the record in *Arnold* was accompanied by a proper motion to supplement, which has not been opposed by the City. Furthermore, we cannot effectively review Young's assertion that this case should have been consolidated with *Arnold* without looking to certain pleadings in that case. We find it unnecessary, however, to supplement the record on appeal with the entire record of *Arnold.* Instead, it is sufficient for our purposes to

incorporate only the complaint and Arnold's affidavit filed in that case, which elaborates on the allegations of the degree of care prevalent in the jail at the time both he and Young were incarcerated.

B. *Motion to consolidate.*

Federal Rule of Civil Procedure 42(a) codifies a district court's "inherent managerial power " "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." ' " *Hendrix v. Raybestos-Manhattan, Inc.,* 776 F.2d 1492, 1495 (11th Cir.1985) (citations omitted). It provides:

> **(a) Consolidation.** When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions;  it may order all the actions consolidated;  and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

The Rule " "is permissive and vests a purely discretionary power in the district court.' " *In re Air Crash Disaster at Florida Everglades,* 549 F.2d 1006, 1013 (5th Cir.1977) (citations omitted)[16]; *Hendrix,* 776 F.2d at 1495; *see also* 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2383, at 439-40 (1994) (although consolidation under Rule 42(a) may be warranted because of a common issue of law or fact, it is not required).

In denying Young's motion for consolidation, the magistrate

---

[16]In *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as precedent all decisions of the former United States Court of Appeals for the Fifth Circuit rendered prior to October 1, 1981.

judge found there were no common issues of law or fact in her case and the one prosecuted by Arnold. We disagree with this assessment. Granted, differences in the two actions do exist. Each plaintiff has alleged a different set of facts concerning his or her particular medical needs and the responses made by jail employees. Furthermore, Arnold appears to be in a stronger position than Young to prove the threshold issue of whether there was an Eighth Amendment violation with respect to his medical care.[17] *See City of Oklahoma City v. Tuttle,* 471 U.S. 808, 816-17 & n. 4, 105 S.Ct. 2427, 2432 & n. 4, 85 L.Ed.2d 791, 799-800 & n. 4 (1985) (for § 1983 municipal liability to attach, there must first be established an underlying violation of a federal right). Nevertheless, both actions allege that jail officials were deliberately indifferent to the psychiatric treatment needs of the plaintiffs during their imprisonment, due to a City custom,

---

[17]An element of both actions is that prison officials were deliberately indifferent to the plaintiffs' medical needs. *See Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251, 260 (1976). As we discuss more fully in Part E of this section of the opinion, although Young's allegations do not present as clear-cut a case of deliberate indifference, a genuine issue of material fact does exist as to whether treatment for her mental condition was unduly delayed. Furthermore, the evidence submitted by the City fails to demonstrate that the psychotropic drugs prescribed for her were dispensed by jail employees as directed. The Eighth Amendment prohibits state caretakers from intentionally delaying medical care or knowingly interfering with treatment once prescribed. *Id.* at 104-05, 97 S.Ct. at 291, 50 L.Ed.2d at 260; *see also Aldridge v. Montgomery,* 753 F.2d 970, 972 (11th Cir.1985). In addition, Young's allegations regarding the beating by Gentle and the conditions to which she was subjected in the isolation cell from October 3, 1989 through October 6, 1989, which stand unrebutted by the City, could possibly, if proven, support § 1983 claims for cruel and unusual punishment. Young consequently passed the first hurdle of precluding summary judgment by sufficiently demonstrating that her rights may have been violated.

practice or policy. The core issue of liability, that is, whether the City can be held accountable for the alleged deprivations suffered by the plaintiffs, is the same in both cases. The district court apparently recognized this overlap when it ordered that *Arnold* be stayed pending the outcome of the present appeal. *See supra* note 11.

District court judges in this circuit "have been "urged to make good use of Rule 42(a) ... in order to expedite the trial and eliminate unnecessary repetition and confusion[.]' " *Gentry v. Smith,* 487 F.2d 571, 581 (5th Cir.1973) (quoting *Dupont v. Southern Pacific Co.,* 366 F.2d 193, 195 (5th Cir.1966), *cert. denied,* 386 U.S. 958, 87 S.Ct. 1027, 18 L.Ed.2d 106 (1967)). Consolidation of the present case with *Arnold* certainly would have made sense. Counsel for the parties is the same in both cases. The actions were filed approximately one month apart, both were assigned to the same district court judge and they have followed a similar course of development. In both actions, the plaintiffs will have to prove that a City custom, practice or policy regarding the medical care of mentally ill inmates caused their damages. This necessarily will mandate proof that the alleged violations were not isolated instances. *See City of Oklahoma City,* 471 U.S. at 821-24, 105 S.Ct. at 2435-36, 85 L.Ed.2d at 802-04. Thus, it is important to each plaintiff's case to introduce evidence of the others' allegations. On the other hand, the establishment of their claims can be accomplished without consolidating the cases.

Even though consolidation would have been warranted, given the permissive nature of Rule 42(a), we cannot conclude that the

magistrate abused his discretion by denying Young's request. Decisions to consolidate have been reversed in cases where a party was prejudiced because his substantive legal interests conflicted with those of a co-party. *See In re Air Crash Disaster,* 549 F.2d at 1013 n. 10. We have found no cases, however, in which a court's refusal to order consolidation has been overturned. Of course, there is nothing to prevent the district court from reconsidering Young's motion upon remand if it is renewed in light of the foregoing discussion. We also observe that, absent consolidation, Young is not precluded from offering evidence of Arnold's claim to support her allegations of an unconstitutional policy or practice.

C. *Motion for appointment of a mental health expert.*

Under Fed.R.Evid. 706(a), a trial court may, on its own motion or on the motion of a party, appoint an expert witness selected by the parties or of its own choosing. The Rule provides that, in civil actions not involving just compensation under the Fifth Amendment, an expert so appointed "shall be paid by the parties in such proportion and at such time as the court directs, and thereafter charged in like manner as other costs." Fed.R.Evid. 706(b).[18] Young sought to have an expert appointed without cost to her, to aid her in opposing the City's motion for summary judgment—specifically, to show that the psychiatric care she received was substandard. Due to Young's indigent status, the appointment of an expert in this case would have necessarily required the court to apportion all of the cost to the City. This

_____

[18]In just compensation cases and in prosecutions involving indigent criminal defendants, expert witness fees may be paid with funds provided by law. Fed.R.Evid. 706(b).

court has never held whether, or under what circumstances, such an arrangement might be allowable and we need not do so now.[19] The presence of a genuine issue of fact with respect to deliberate indifference to Young's medical needs is apparent from the face of the record. *See supra* note 17. Expert opinion testimony would have been superfluous. The court's refusal to appoint an expert was not error.[20]

D. *Motion for a hearing to present oral testimony.*

This court's predecessor has recognized that Fed.R.Civ.P. 43(e), governing evidence on motions, permits a district court to consider oral testimony in connection with a motion for summary judgment. *See Hayden v. First Nat'l Bank of Mt. Pleasant, Tex.,* 595 F.2d 994, 997 (5th Cir.1979). This method of pinpointing factual disputes is not favored, however, "because the summary judgment hearing is not meant to be a preliminary trial.... Accordingly, oral testimony should be used [only] when there is reason to believe that it will be of significant assistance to the court and is reasonably circumscribed in scope." 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2723, at 63 (1983) (footnotes omitted) (alteration added).

Young desired to present oral testimony for the same reason

---

[19]The Ninth Circuit held in *McKinney v. Anderson,* 924 F.2d 1500 (9th Cir.), *vacated on other grounds,* 502 U.S. 903, 112 S.Ct. 291, 116 L.Ed.2d 236 (1991), that the Rule permits a district court to apportion all of the cost to one side in an appropriate case. *Id.* at 1511.

[20]We express no opinion as to whether the appointment of an expert might be warranted should this case proceed to trial.

she sought an expert—to expose factual issues concerning the sufficiency her medical treatment.  As we have already pointed out, she accomplished this feat without a hearing.  We therefore affirm the denial of her request.

E. *Motion for summary judgment.*

We review the grant or denial of a motion for summary judgment *de novo,* applying the same legal standards employed by the district court.  *Parks v. City of Warner Robins, Ga.,* 43 F.3d 609, 612-13 (11th Cir.1995).  Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  In a case such as this, where the nonmoving party will bear the burden of proof at trial, "the moving party, in order to prevail, must do one of two things:  show that the non-moving party has no evidence to support [an essential element of] its case, or present "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial.' "  *Hammer v. Slater,* 20 F.3d 1137, 1141 (11th Cir.1994) (quoting *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1438 (11th Cir.1991) (en banc)).  Only then does the burden shift to the nonmoving party to designate, through affidavits or as otherwise provided in Fed.R.Civ.P. 56, "specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).

As stated earlier, to prevail, Young must be able to prove that the conditions of her confinement violated constitutional

mandates. She contends that treatment for her mental condition was unduly delayed, that she did not receive medication as prescribed and that the events she endured in the isolation cell fell below standards of human decency. These allegations, if proven and supported by the requisite evidence of intent, could lead to a finding that her rights were violated.

Although the record shows that Young received some treatment for mental illness at various times during her imprisonment and that medication was furnished on certain occasions, it does not demonstrate the absence of a factual dispute with respect to undue delay or that medication was dispensed by jail employees as prescribed. The City asserted in its statement of undisputed facts in support of the motion for summary judgment that Young "was regularly given her medications as prescribed by medical personnel by the staff of the City of Augusta Jail." (R1-16, ¶ 6). In addition, the City's affiant, Cullinan, stated that "[a]t all times when Plaintiff was placed on medication, jail personnel ensured and monitored Plaintiff's taking the medication." (R1-19, ¶ 16). The documentation proffered by the City to support these assertions, however, is rife with gaps. The jail medication charts pertain to only one day of Young's incarceration in September and an unidentified day or days in October. Moreover, it cannot be discerned from the charts whether the medicine dispensed on those days was given as directed, or, if there were other medications Young should have received. Much of the medical record submitted by the City, which presumably contains the information concerning the prescribed treatment, is handwritten and replete with medical

abbreviations, making it indecipherable. No summaries interpreting this evidence or affidavits of the persons in charge of Young's medical care at the various treatment centers or the jail were provided. Furthermore, the City proffered no evidence to rebut Young's claims of inhumane treatment while in isolation. [21] Accordingly, if this action had been filed against the individual jailers responsible for Young's care, summary judgment plainly would not have been warranted.

Because this case is confined to municipal liability rather than individual fault, however, Young must also be able to demonstrate a direct causal link between a City policy or custom and the alleged constitutional deprivations. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412, 424 (1989). It has long been settled that respondeat superior principles of liability do not apply to municipalities in § 1983 actions. *See Monell v. Department of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611, 636 (1978). Liability will attach only where a government custom or policy is " "the moving force of the constitutional violation.' " *City of Oklahoma City,* 471 U.S. at 820, 105 S.Ct. at 2434, 85 L.Ed.2d at 802 (quoting *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509, 521 (1981), and *Monell,* 436 U.S. at 694, 98 S.Ct. at 2038, 56 L.Ed.2d at 638).

Young attributes her alleged damages to a City custom of inadequate selection and training of employees when it comes to

---

[21]Although the City contended that the conditions of which Young complained were contrary to jail policy, it did not dispute the truth of her allegations.

inmates suffering from mental illness and of failing to provide on-site medical care at the jail. We reject, as a matter of law, her contention that municipal jails should be equipped to offer on-site, expert psychiatric care for inmates. The City's stated policy of transporting prisoners to local hospitals when they are in need of medical attention not available at the jail is compatible "with "the evolving standards of decency that mark the progress of a maturing society.' " *Estelle,* 429 U.S. at 102, 97 S.Ct. at 290, 50 L.Ed.2d at 259 (quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630, 642 (1958)); *see City of Canton, Ohio,* 489 U.S. at 386-87, 109 S.Ct. at 1203-04, 103 L.Ed.2d at 425 (policy requiring jailers to take inmates needing medical care to a hospital for treatment is constitutional on its face). Young's claim that jail employees are inadequately selected or trained to recognize the need to remove a mentally ill inmate to a hospital or to dispense medication as prescribed is cognizable, however, if the deficiency reflects deliberate indifference by City policymakers to the rights of inmates and it is closely related to the ultimate injury. *City of Canton, Ohio,* 489 U.S. at 388-92, 109 S.Ct. at 1204-06, 103 L.Ed.2d at 426-28. This requires proof that the failing was a conscious choice by policymakers among alternative courses of action, which in turn, caused the jailers' deliberate indifference. *Id.* at 389-91, 109 S.Ct. at 1205-06, 103 L.Ed.2d at 427-28.

> The issue in a case like this one ... is whether [the] training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent "city policy.' It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train [or select]

its employees.  But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.  In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*Id.* at 390, 109 S.Ct. at 1205, 103 L.Ed.2d at 427-28 (footnotes omitted) (alterations added);  *see also Thomas v. Town of Davie,* 847 F.2d 771, 773 (11th Cir.1988) (liability may be founded upon proof of a policy of deficiencies in staffing or procedures such that the inmate is effectively denied access to adequate medical care).

Before it may be said that a municipality has made a deliberate choice among alternative courses of action, its policymakers must have had "actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens." *City of Canton, Ohio,* 489 U.S. at 396, 109 S.Ct. at 1208, 103 L.Ed.2d at 431 (O'Connor, J., concurring in part and dissenting in part) (cited with approval in *Farmer v. Brennan,* 511 U.S. ----, ----, 114 S.Ct. 1970, 1981, 128 L.Ed.2d 811, 827-28 (1994)).  This may be demonstrated in one of two ways.

First, the need for a particular type of training may be obvious where jailers face clear constitutional duties in recurrent situations.  *See, e.g., id.* 489 U.S. at 390 n. 10, 109 S.Ct. at 1205 n. 10, 103 L.Ed.2d at 427 n. 10 (citing the obvious need to train officers with respect to the constitutional limitations on the use of deadly force).  Young's claims do not fit within this

category.  *See id.* at 396-97, 109 S.Ct. at 1209, 103 L.Ed.2d at 432 (observing that contentions "that police officers were inadequately trained in diagnosing the symptoms of emotional illness—falls far short of the kind of "obvious' need for training that would support a finding of deliberate indifference to constitutional rights on the part of the city") (O'Connor, J., concurring in part and dissenting in part).

Alternatively, the need for more or better training may be obvious where a pattern of constitutional violations exists such that the municipality knows or should know that corrective measures are needed.  *Belcher v. City of Foley, Ala.,* 30 F.3d 1390, 1397-98 (11th Cir.1994).  This court has therefore held that,

> [t]o prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, "although not authorized by written law or express municipal policy, is "so permanent and well settled as to constitute a "custom or usage' with the force of law[.]"  In other words, a longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it.

*Brown v. City of Fort Lauderdale,* 923 F.2d 1474, 1481 (11th Cir.1991) (citations omitted);  *see also City of Oklahoma City,* 471 U.S. at 823-24, 105 S.Ct. at 2436, 85 L.Ed.2d at 804 (where a § 1983 claim turns on the failure of an officer to comply with an express, constitutional policy, proof of more than a single incident will be necessary to establish both the requisite municipal fault and the causal connection between the practice and the constitutional deprivation).

The record in this case reveals that Young is not the only City inmate who has complained of a lack of adequate treatment for serious medical problems stemming from mental illness.

Furthermore, the alleged mistreatment and omissions suffered by Young occurred over a period of several months. According to her deposition testimony, at least three different jailers were charged with her care during her incarceration. Construing this evidence in the light most favorable to Young, an inference may be made that a pattern of deliberate indifference to the psychiatric needs of mentally ill inmates existed at the jail of which City policymakers should have been aware.

We agree with Young that Cullinan's affidavit is insufficient to counter this inference. It emphasizes the City's general, formal policy concerning inmate medical care and the training of jail personnel, which has no bearing on the alleged custom which Young complains was actually in place. The record does not confirm Cullinan's contention that the official policy regarding prompt and appropriate medical attention was followed in this case. Furthermore, it cannot be determined from Cullinan's broad statements with respect to the initial and continuing training of jail staff that the instruction provided to the particular guards charged with Young's care was sufficient. Evidence of the details of the training program is conspicuously absent from the record. We therefore cannot say that the need for more or better training was not obvious or that deficiencies in training did not cause Young's injuries. Nor did the City submit any evidence concerning the selection of jail employees. Lacking such evidence, the City was not entitled to summary judgment.

### III. CONCLUSION

In accordance with the foregoing discussion, we AFFIRM the

denial of Young's motions for appointment of a mental health expert, for a hearing to present oral testimony and to consolidate her case with *Arnold.* Because issues of material fact remain with respect to whether Young suffered constitutional deprivations caused by a custom of inadequate selection or training of jail employees of which the City should have been aware, we REVERSE the district court's grant of summary judgment and REMAND for further proceedings.