[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11622
_____

D.C. Docket No. 6:14-cv-00307-PGB-GJK


BLITZ TELECOM CONSULTING, LLC,
a Florida Limited Liability Company,

                              Plaintiff - Counter Defendant - Appellee,

versus

PEERLESS NETWORK, INC.,
an Illinois Corporation,

                              Defendant - Counter Claimant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 5, 2018)

Before ROSENBAUM, JILL PRYOR, and RIPPLE,[*] Circuit Judges.

PER CURIAM:

This appeal marks the latest chapter in a tumultuous business relationship between Defendant-Appellant Peerless Network, Inc. ("Peerless"), and Plaintiff-Appellee Blitz Telecom Consulting, LLC ("Blitz"). For the better part of four years, Blitz and Peerless have litigated claims related to the non-payment of "co-marketing" fees owed under a contract between the parties.

In this latest installment, after a trial in the district court, a federal jury found in favor of Blitz on a claim that Peerless breached the contract by failing to remit the co-marketing fee, and awarded Blitz over $2 million in compensatory damages. Peerless now appeals that judgment, contending the district court committed legal error on three separate occasions before and during the trial. After careful consideration, we affirm the district court's judgment in full.

## I.

### A.

Appellant Peerless is a telecommunications company whose subsidiaries operate as "local exchange carriers." Through its subsidiaries (collectively

---

[*] Honorable Kenneth F. Ripple, United States Circuit Judge for the Seventh Circuit, sitting by designation.

"Peerless"), Peerless provides traditional land-line telephone service.[1] Specifically, Peerless operates transmission networks that facilitate telephone calls between end-users, or, in other words, a caller and a receiver.

Appellee Blitz is a buyer and seller of telephone numbers. Its business involves purchasing telephone numbers from telecommunications carriers, like Peerless, and reselling those numbers in bulk to companies who, in turn, provide discount telephone service to end-use consumers. Some, but not all, of the companies to which Blitz resells telephone numbers are prepaid calling-card service providers.

On November 9, 2010, Blitz and Peerless entered into an "IP Control Agreement" (the "Contract"). The Contract contemplated that Blitz would "place" telecommunication traffic on Peerless's networks, for which Peerless would be compensated by other carriers. *See* Contract §§ 3.5, 7.4. In exchange, Peerless agreed to pay Blitz a 30% commission each month.[2] *See* Contract App. A § 1.1. This commission, known as a "co-marketing fee," is the basis for the parties' present dispute.

---

[1] Peerless also offers some wireless services.

[2] The Contract states that co-marketing fees are "based on collected revenues on InterLata CABS (carrier access billing) charges for Interstate and Intrastate traffic terminating to or associated with the local telephone numbers" assigned to Blitz. Contract App. A § 1.1. "InterLATA" is a statutory term defined as "telecommunications between a point located in a local access and transport area and a point located outside such area." 47 U.S.C. § 153 (26).

By all accounts, both parties performed under the Contract throughout 2011 and early 2012. Blitz directed traffic onto Peerless networks, and Peerless accounted for and paid Blitz the monthly co-marketing fee.

Then, in April 2012, Peerless notified Blitz by letter that it was invoking the Contract's "Change in Law" provision and would no longer remit the co-marketing fee. In relevant part, the Change in Law provision provides that, in the event of "any legislative, regulatory, judical [sic] or other legal action that materially affects the ability of a Party to perform any material obligation," Blitz or Peerless can, on 30 days' written notice, "require that the affected provision(s) be renegotiated, or that new terms and conditions be added to this Agreement." Contract § 23.

The action Peerless relied on to invoke this provision was a March 9, 2012, unpublished partial summary-judgment order issued by the United States District Court for the Northern District of Texas. Peerless asserted that this order constituted a change in telecommunications law that "materially affect[ed] the ability of Peerless to perform in paying [the co-marketing fee] to [Blitz] for prepaid calling card traffic." The order, issued in a case captioned *Southwestern Bell Telephone Co. v. IDT Telecom, Inc.*, No. 3:09-cv-01268-P (N.D. Tex. Mar. 9, 2012), 2012 U.S. Dist. LEXIS 190775 (the "*IDT* Decision"), involved a dispute between several local exchange carriers (not including Peerless) and a number of prepaid calling-card providers. The carriers brought suit on claims that they were

4

owed certain "access charge fees" by the prepaid calling-card companies who used the carrier networks to transmit calls. *Id.*, 2012 U.S. Dist. LEXIS 190775, at *2-*7. The district court granted partial summary-judgment in favor of the carriers on the issue of liability, ruling that the prepaid calling-card "traffic [was] subject to access charges."[3] *Id.* at *18. According to Peerless, the *IDT* Decision changed how much Peerless was compensated by third-party carriers on prepaid calling-card traffic, thereby lowering Peerless's collections from these carriers, and so constituted a change in law entitling Peerless to cease paying Blitz co-marketing fees. Blitz disagreed that the *IDT* Decision amounted to a change in law under the Contract, and the instant litigation ensued.

Meanwhile, as these events were unfolding in late 2011 and early 2012, Blitz was also exploring the possibility of selling its business. Though Peerless initially expressed interest in acquiring Blitz, the parties never reached an agreement for Peerless to do so. Blitz entertained other offers and eventually entered a tentative purchase agreement with a third party. As it turned out, Peerless and the third-party buyer were direct competitors.

Upon learning about the potential sale and eager to retain Blitz's business, Peerless approached Blitz with an alternative solution. Under the proposal, Blitz would establish and obtain licensing for a separate entity that would operate as a

---

[3] The case subsequently settled on the issue of damages. *See Dollar Phone Access, Inc. v. AT & T Inc.*, No. 14-CV-3240-SLT-LB, 2015 WL 430286 at *3 (E.D.N.Y. Feb. 2, 2015).

5

local exchange carrier like Peerless.  Peerless and the new entity would then enter a contractual relationship for certain telecommunication services, ostensibly to the financial benefit of both.

Blitz alleges that it was in the midst of finalizing a purchase agreement with the third party but was swayed by Peerless's proposal and backed out.  Blitz created the new entity—Local Access, LLC ("Local Access")—and Local Access and Peerless entered into a contractual agreement known as a "Homing Tandem Service Agreement" (the "Homing Agreement").  Under the terms of the Homing Agreement, Local Access agreed to pay Peerless for the right to "sublet" a portion of Peerless's transmission network, and Peerless agreed to divert a portion of call traffic to Local Access.  Blitz was not a party to the Homing Agreement.

Local Access contends that while it performed under the Homing Agreement, Peerless breached the contract from the outset.  In Local Access's view, Peerless never intended to perform and instead merely proposed the Homing Agreement in order to prevent the sale of Blitz to a competitor.  Eventually, Local Access and Blitz filed a separate action against Peerless on claims related to the Homing Agreement.

**B.**

Blitz initiated the instant dispute in the U.S. District Court for the Middle District of Florida in February 2014. *Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, No. 6:14-cv-00307-Orl-PGB-GJK (M.D. Fla. filed Feb. 24, 2014) ("Case 307"). In its Complaint, Blitz alleged four claims for relief, including breach of contract, quantum meruit, declaratory judgment, and equitable accounting.

Less than a month later, Local Access and Blitz filed a separate suit against Peerless in the same district court, relating to the circumstances surrounding the Homing Agreement. *Local Access, LLC & Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, No. 6:14-cv-00399-Orl-PGB-TBS (M.D. Fla. filed Mar. 12, 2014) ("Case 399"). In that dispute, Local Access and Blitz raised tort claims of fraudulent inducement, and Blitz raised a claim for interference with a business relationship. Local Access, but not Blitz, raised one claim for breach of contract. As it so happened, both suits came before the same district court judge.

Peerless filed an Amended Answer and Affirmative Defenses in Case 307, raising two counterclaims against Blitz for breach of contract and quantum meruit under the Contract. Shortly thereafter, Peerless filed a motion to consolidate Cases 307 and 399. The district court denied the motion, citing the presence of different contractual relationships, different claims, and different parties in the two actions.

7

The parties conducted discovery in Case 307, and Blitz moved for partial summary judgment on the declaratory-judgment and equitable-accounting claims. The district court granted partial summary judgment in favor of Blitz on the declaratory-judgment claim, issuing a judicial declaration that the *IDT* Decision was insufficient to invoke the Change in Law provision.[4]

The district court scheduled trial in Case 307 on the remaining breach-of-contract and quantum-meruit claims. Some months before trial, Peerless filed a motion *in limine* requesting exclusion of all evidence, testimony, exhibits, and arguments related to "non-InterLATA" telephone traffic. The district court denied the motion. Peerless moved for consolidation of Cases 307 and 399 a second time, which the district court again denied.

Case 307 proceeded to trial, and a jury found in favor of Blitz on its breach-of-contract claim, awarding Blitz $2,347,704.43 in damages. The jury also found in favor of Blitz on Peerless's counterclaims. The district court entered a judgment in accordance with the jury's verdict.[5] Peerless filed a notice of appeal, which

---

[4] While not directly at issue on appeal, the district court also granted summary judgment in favor of Peerless on Blitz's claim for an accounting, and it dismissed Count IV of Blitz's complaint. The district court reasoned that an accounting constituted a remedy for a successful cause of action, rather than a stand-alone claim for relief. So although the district court dismissed Count IV, it noted that an accounting might nevertheless be appropriate if Blitz prevailed on either its breach-of-contract or quantum-meruit claim.

[5] On March 31, 2017, the parties to Case 399 filed a joint Notice of Settlement, and the same day, the district court administratively closed the case subject to final notification of settlement. *See Local Access, LLC & Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, No. 6:14-cv-00399-Orl-PGB-TBS (M.D. Fla. filed Mar. 31, 2017), ECF Nos. 334, 335.

became effective to confer appellate jurisdiction following the district court's judgment on a post-trial Rule 59 motion.

## II.

In a diversity case like this one, we ordinarily apply federal law to procedure and state law to substantive matters. *See Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). However, pursuant to a choice-of-law provision contained in the parties' Contract, we will apply Illinois law to the substantive claims. *See* Contract § 12. On appeal the parties do not dispute that Illinois law governs.

Appellant challenges the grant of partial summary judgment, the denial of its motions to consolidate, and the admission of certain evidence at trial. We review the grant of summary judgment de novo, construing the facts in the light most favorable to the non-moving party and applying the same legal standards as the district court. *Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1293-94 (11th Cir. 2013). We review the remaining claims for abuse of discretion. *Wright v. Dougherty Cty.*, 358 F.3d 1352, 1354 (11th Cir. 2004) (consolidation); *City of*

---

Subsequently, the district court reopened the case, ultimately ordering that the settlement agreement be enforced and the case closed again. *See* ECF No. 363 at 6.

9

*Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 556 (11th Cir. 1998) (admissibility of evidence).

## III.

Peerless raises three distinct arguments.  First, Peerless contends the district court erred by granting Blitz partial summary judgment on the issue of whether the *IDT* Decision was sufficient to invoke the Contract's Change in Law provision. Second, Peerless argues the district court erred by denying Peerless's motion to consolidate this case (Case 307) with the dispute involving Local Access (Case 399).  Third, Peerless challenges the district court's admission of evidence at trial over Peerless's "motion *in limine* objections."  We address each argument in turn.

### A.

We begin with Appellant's challenge to the district court's grant of partial summary judgment in favor of Blitz on the declaratory-judgment claim.  As we have noted, the district court ruled with respect to this claim that the *IDT* Decision was insufficient to invoke the Change in Law provision.

The Declaratory Judgment Act grants federal courts discretion to "declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  A court's primary objective when construing a contract is to give effect to the parties' intentions as expressed in the language of

10

the contract. *Cent. Ill. Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 213 (Ill. 2004). For that reason, our first inquiry is whether the contract is clear and unambiguous. *Id.*

If the terms used in a contract are clear and unambiguous, then a court may interpret the contract by giving the words their "plain, ordinary, and popular meaning." *Id.* In such circumstances, a court may declare each party's rights and obligations under the contract. *Id.* But if the terms used in a contract are reasonably susceptible of more than one meaning, or are "obscure in meaning through indefiniteness of expression," the contract is deemed ambiguous and interpretation is a question of fact reserved for the jury. *Shields Pork Plus, Inc. v. Swiss Valley Ag. Serv.*, 767 N.E.2d 945, 949 (Ill. App. Ct. 2002) (internal quotation marks omitted). Nevertheless, a contract is not rendered ambiguous simply because the parties disagree on the meaning of one word or another. A court may decide the issue of whether a contract is ambiguous as a question of law. *Cent. Ill. Light Co.*, 821 N.E.2d at 214.

Peerless asserts that two provisions in the Contract contain ambiguous terms requiring jury interpretation. First, Peerless argues that the "Change in Law" provision is ambiguous because the terms "materially affects" and "perform" are not defined. Second, Peerless contends that the "Compensation" provision is ambiguous. The Compensation provision states that "Peerless will pay a co-

marketing fee at the stated commission structure of 30% to [Blitz] based on collected revenues on <u>InterLata</u> CABS (carrier access billing) charges for Interstate and Intrastate traffic." Contract App. A § 1.1. Peerless insists that provision is ambiguous because it does not define what type of "carrier access billing" is subject to the 30% co-marketing fee. On de novo review, we conclude neither provision of the Contract is ambiguous.

To begin, Peerless does not disclose what various interpretations reasonably and fairly apply to the words "material" and "perform."[6] Citing *Oxford's English Dictionary*, Peerless submits that the plain and ordinary meaning of the word "material" is "significant." This is nearly identical to the district court's interpretation. The district court, which relied on *Black's Law Dictionary*, concluded the plain and ordinary meaning of "material" was "significant or essential." We do not read a meaningful difference between "significant" and "significant or essential." Bald declarations of ambiguity, without more, are not enough to create a genuine dispute of fact. *Cent. Ill. Light Co.*, 821 N.E.2d at 214.

Nor is the Contract ambiguous because of the Compensation provision. The partial summary-judgment order addressed only the narrow issue of whether the

---

[6] Peerless contends that Blitz defined "material" "to mean a *complete* frustration or impossibility of performance." Appellant-Def.'s Reply Br. at 11 (emphasis added). That is inaccurate. Blitz raised the "complete frustration" issue in responding to Peerless's affirmative defense that the *IDT* Decision established a frustration of purpose, not in the context of defining "material." *See infra* at 15–17.

*IDT* Decision was a qualifying event for purposes of the Change in Law provision. That declaration did not preclude Peerless from litigating, at trial, what specific billing practices were to be included in the 30% co-marketing fee-compensation structure.[7]

Accordingly, we find the Change in Law provision clear and unambiguous. And under that provision, as we have noted, to constitute a change in law, an event must be (1) a legislative, regulatory, judicial, or other legal action (2) that materially affects (3) a material obligation or the ability to perform under the Contract. Applying the plain, ordinary and, popular meaning of "material," we conclude that the effect of a judicial or legal action, as well as the obligation affected by that action, must be "significant." *Cent. Ill. Light Co.*, 821 N.E.2d at 213.

Having resolved the threshold inquiry of whether the Contract is ambiguous, we now consider whether the *IDT* Decision was a change in law sufficient to allow renegotiation of the contract. We conclude it was not.

Peerless has not raised any genuine dispute that the *IDT* Decision did not interfere with its material obligation to pay Blitz the 30% co-marketing fee on the revenues Peerless actually collected from Blitz traffic. Rather, the most Peerless argues is that the *IDT* Decision hindered Peerless's ability to collect revenues on

---

[7] Incidentally, the alleged ambiguity in the Compensation provision did not ultimately present an obstacle during the two years Peerless timely paid Blitz the co-marketing fee.

13

Blitz traffic in the first place. Specifically, Peerless's President and CEO averred that Peerless collected only 16% of the access-charge and reciprocal compensation revenue after the *IDT* Decision that it collected before the *IDT* Decision. According to Peerless, because its revenues were affected, it must therefore be excused from its obligation to pay the co-marketing fee.

But Peerless has its wires crossed. The relevant obligation is the payment of co-marketing fees on the amounts actually collected, not the collection of revenue. The value of collected revenue is merely a yardstick by which Peerless measures the 30% co-marketing fee. As the value of that collection declines or increases, so too does the value of the co-marketing fee Peerless owes Blitz.

Any other conception of the parties' intent runs smack into to the express terms of the Contract. The Compensation provision states "[t]he intention of this section is that Peerless pays [Blitz] *only on collected* revenues." Contract App. A § 1.3 (emphasis added). We read this provision as a clear expression of the parties' intent that Peerless would pay co-marketing fees in proportion to the value of revenues collected. No more; no less. That Peerless has grown disenchanted with the value of its collected revenue does not mean it can short-circuit its obligation to pay Blitz the 30% co-marketing fee.

Peerless also challenges the summary-judgment order by attempting to raise a factual dispute over whether the *IDT* Decision frustrated the Contract's purpose.

14

Peerless submits that because it collects less revenue than it anticipated when entering the Contract, it must be excused from paying the co-marketing fee. Here again, we find this argument does not stand up to scrutiny.

Under Illinois law, the doctrine of commercial frustration is an extension of the defense of impossibility and excuses nonperformance of a contractual obligation where an unforeseeable event renders the value of a party's performance "totally or almost totally destroyed." *Illinois-American Water Co. v. City of Peoria*, 774 N.E.2d 383, 390–91 (Ill. App. Ct. 2002). To survive summary judgment, a non-moving party must demonstrate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted).

In this case, therefore, Peerless can survive summary judgment by presenting "specific facts" showing a triable dispute on both of the following issues: whether the *IDT* Decision was "not reasonably foreseeable," and whether the *IDT* Decision "totally or almost totally destroyed" the value of the Contract. *Illinois-American Water Co.*, 774 N.E.2d at 390–91.

The parties dispute whether Peerless properly pled frustration of purpose as an affirmative defense. But we need not determine that issue on appeal because we conclude that, even if Peerless properly pled frustration of purpose in its Amended Answer, Peerless has nonetheless failed to show specific facts that a triable issue of

fact remains on whether the *IDT* Decision "totally or almost totally destroyed" the value of the Contract.  *Id.*

Peerless states that the *IDT* Decision produced "a shift in the intercarrier compensation structure after the parties entered into the Contract, which frustrated the purpose of the Contract and denied Peerless the benefit of the bargain."  But Peerless was not "denied" the benefit of the bargain.  Under the bargained-for terms of the Contract, Peerless received an incremental growth in telecom traffic and the right to keep 70% of the revenue it collected thereon.  In exchange, Peerless agreed to pay Blitz a 30% co-marketing fee.  The record indicates, and Peerless does not dispute, that Peerless continued to receive Blitz traffic and continued to collect revenue on that traffic after the *IDT* Decision.  Though we recognize the amount of collected revenue declined, the parties' arrangement was not "totally or almost totally destroyed" by the *IDT* Decision.  *Id.*

Since Peerless fails to genuinely dispute that the *IDT* Decision did not interfere with its obligation to pay co-marketing fees to Blitz, Peerless cannot rely on the *IDT* Decision to invoke the Change in Law provision.  We therefore affirm the district court's grant of summary judgment on Count III, the declaratory-judgment claim.

**B.**

Peerless also argues the district court erred in denying Peerless's motion to consolidate this action, Case 307, with the separate Local Access lawsuit, Case 399.  We review a district court's decision whether to consolidate multiple actions for a "clear abuse of discretion."  *Eghnayem v. Boston Sci. Corp.*, 873 F.3d 1304, 1313 (11th Cir. 2017) (internal quotation marks omitted).  On that standard, "we must affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard."  *Id.* (citing *United States v. Brannan*, 562 F.3d 1300, 1306 (11th Cir. 2009)).

Federal Rule of Civil Procedure 42(a) provides that, "[i]f actions before the court involve a common question of law or fact, the court may . . . join for hearing or trial any or all the matters at issue in the actions; . . . consolidate the actions; or . . . issue any other order to avoid unnecessary cost or delay."  Fed. R. Civ. P. 42(a)(1)–(3). Rule 42(a) codifies the district court's "inherent managerial power to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Young v. City of Augusta*, 59 F.3d 1160, 1168 (11th Cir. 1995) (internal citations omitted).  A trial court's decision to consolidate suits is discretionary.  *Id.*

When deciding if separate lawsuits should be consolidated into a single action, a trial court weighs several factors, including (1) the risk of prejudice in

17

allowing the matters to proceed separately, (2) the potential for confusion of facts or legal issues, (3) the risk of inconsistent verdicts, (4) the burden on parties, witnesses, and the court, and (5) the length of time and relative expense involved in conducting a single trial or multiple trials. *See Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985).

In this case, Peerless moved to consolidate Cases 307 and 399 on two separate occasions. Both times, Peerless argued consolidation was appropriate in light of "overlapping questions of law and fact." When Peerless moved for consolidation the second time, it also asserted that the "motivation, purpose, and intent" in entering the Homing Agreement was to "modify[] the Blitz Contract by creating a new arrangement between the parties."

The district court denied both motions. In its first denial, the district court found that although "both actions share a common, albeit limited, factual background, consolidation of these disparate actions is likely to result in confusion and will not significantly promote judicial economy." The court explained that while Case 307 "involve[d] a fairly straightforward breach of contract wherein Blitz contends Peerless had a duty to remit certain payments and failed to do so," Case 399 entailed "a completely separate business relationship entered into between Local Access and Peerless, the alleged fraud which induced that relationship, and allegations of tortious interference with a competing bidder for

18

that business."   Given the disparate claims and "completely separate business relationship[s]," the district court determined that any measure of judicial economy achieved by consolidation was "substantially outweighed" by the risk of confusing a jury and prejudicing the parties.[8]

When the district court denied consolidation for the second time, it reiterated that although "both cases involve[d] Blitz and Peerless and the evolution of their relationship over the course of several years, the similarities end there.  Neither case involves the same facts, the same contracts, or the same claims for relief."  As before, the district court also determined that "prejudice would more likely result from consolidation than be avoided."   And to the extent Peerless argued the Homing Agreement was a "modification" of the Contract with Blitz, the district court rejected the notion that that theory supported consolidation as "Peerless never pleaded this defense (or any facts that would place Blitz on notice that such a defense might exist) in the 307 Case."[9]

_____

[8]   The district court explained that a jury in Case 307 "will not need to understand the creation of Local Access and the dispute arising thereafter in order to duly consider" the "breach of contract/failure to remit payment action."  Likewise, a jury in Case 399 will not "be required to know anything about the alleged failure by Peerless to remit money to Blitz pursuant to a *separate* contract in order to decide the tortious interference and fraudulent inducement allegations" at issue there.  The court also expressed concern that in "a consolidated trial, the jury will hear evidence that not only did Peerless allegedly fail to remit money to Blitz in violation of a contractual obligation," but also "that Peerless allegedly deceived Blitz into foregoing a lucrative sale, caused Blitz to create a new entity (Local Access) and then breached the contract with this newly formed entity."

[9]   Indeed, in its Amended Answer in Case 307, Peerless states only that it "*attempted* to negotiate modifications," and not that the parties actually reached an agreement.  Am. Answer,

19

At two separate phases of the litigation, the district court engaged in a thorough assessment of the factors delineated in *Hendrix*. Both times the district court ruled consolidation was neither appropriate nor beneficial. We find no abuse of discretion on either occasion, and we affirm the denial of Peerless's motions to consolidate.

### C.

Finally, Peerless argues that the district court erred by denying its motion *in limine* to exclude as irrelevant evidence of Blitz's entitlement to co-marketing fees based on non-InterLATA traffic.[10] We review the district court's ruling on the admissibility of evidence for abuse of discretion, *see City of Tuscaloosa v. Harcros Chems., Inc*., 158 F.3d 548, 556 (11th Cir. 1998), and find no such abuse occurred in the district court. As the district court explained, Blitz's breach-of-contract and

¶ 20 (emphasis added). Also, we note that Peerless raised the "modification" issue only after the district court's summary-judgment order finding the *IDT* Decision insufficient to trigger the Change in Law provision. As the district court surmised, it "appears that Peerless now attempts to use consolidation as a Trojan Horse to insert a defense its [sic] alleges in the 399 Case into the 307 Case."

[10] Blitz contends that Peerless waived this argument because it merely sought to have the evidence excluded in a motion *in limine* and did not ultimately object when such evidence was introduced at trial. Quoting this Court's decision in *Hendrix v. Raybestos-Manhattan, Inc.,* 776 F.2d 1492, 1504 (11th Cir. 1985) (internal quotations omitted), Blitz asserts that "a party whose motion in limine has been overruled must object when the error he sought to prevent with his motion is about to occur at trial." But since *Hendrix*, the Federal Rules of Evidence have been amended to provide that a party need not renew an objection previously articulated in a motion *in limine* in order to preserve that objection for appeal. *See* Advisory Committee's Notes on 2000 Amendment to Fed. Rule Evid. 103, 28 U.S.C.App., p. 1007. And our current precedent provides that "[a] motion *in limine* may preserve an objection when the district court has 'definitively' ruled on the matter at issue," which the district court did here. *ML Healthcare Servs., LLC v. Publix Super Markets, Inc*., No. 15-13851, 2018 WL 747392, at *7 (11th Cir. Feb. 7, 2018) (citing *Tampa Bay Water v. HDR Eng'g, Inc*., 731 F.3d 1171, 1178 (11th Cir. 2013)).

quantum-meruit claims implicate both InterLATA *and* non-InterLATA traffic. At least as to the quantum-meruit claim, the Complaint asserts that Blitz sought recovery of its share of revenues deriving from telecommunications traffic Blitz placed on Peerless's networks, which necessarily includes non-InterLATA traffic. Therefore, we cannot say that the district court abused its discretion when it admitted evidence of non-InterLATA traffic.

## IV.

For the foregoing reasons we **AFFIRM** the district court's judgment.

**AFFIRMED.**