Timothy Latham and Charles Elam appeal from a summary judgment in favor of the estate of Danny Redding,[1] Vernon Milling Company, and Terra First, Inc. Timothy Latham, as the father of "Baby Latham"[2] and as personal representative of the estate of decedent Kelly Latham; and Charles Clifton Elam, as the personal representative of the estates of decedents Gladys Elam and Clifton Elam, brought an action alleging that decedent Danny Redding negligently or wantonly caused the deaths of Kelly Latham ("Latham"), her unborn child, and her grandparents, Gladys and Clifton Elam when the tractor trailer rig he was operating struck the automobile Latham was driving. Plaintiffs also alleged that Vernon Milling Company, as the lessor of the truck, and Terra First, Inc., as the lessee of the truck under a standard trip lease, were vicariously liable for the torts of their alleged agent, Redding, committed in the scope of his employment. The plaintiffs have made various arguments, but the issue dispositive of this appeal is whether the plaintiffs submitted substantial evidence of Redding's alleged negligence or wantonness.
The plaintiffs filed a complaint against Vernon Milling, Terra First, Redding, Alfa Insurance Company, Progressive Specialty Insurance Company, and Guaranty National Insurance Company on December 21, 1990.[3] Redding and Vernon Milling each made a timely motion to dismiss. Redding's motion was based on several grounds, among them failure to state a claim upon which relief can be granted. Rule 12(b)(6), Ala.R.Civ.P. Answers from all defendants were then filed, and interrogatories and requests for production were submitted and answered. On June 12, 1991, the defendant Redding died and the plaintiffs filed a suggestion of death on August 22, 1991. On November 11, 1991, Terra First filed a motion for summary judgment, attaching excerpts from the deposition of Mr. C.B. Simmons, an eyewitness to the accident, who gave the only deposition taken in the case. On February 14, 1992, in opposition to the motion, the plaintiffs filed affidavits from Robert W. Rinehart (the former chief of police *Page 492 
who investigated the accident) and Albert Medina (an accident reconstructionist employed by the plaintiffs).[4] The defendant Terra First moved to strike the affidavits of Rinehart and Medina. The plaintiffs filed responses to the motions to strike on February 25, 1992, and March 11, 1992. The circuit court never expressly ruled on Terra First's motion to strike the affidavits submitted by the plaintiffs. On February 27, 1992, Vernon Milling filed a motion for summary judgment. This motion was amended on March 18, 1992, to include an affidavit.[5] On March 2, 1992, Terra First filed a memorandum in support of its motion for summary judgment. Also, on the same day, the plaintiffs amended the complaint to substitute Charles Elam, as administrator of the estate of Danny Redding, for the deceased defendant Redding.
On August 10, 1992, the circuit court entered a summary judgment in favor of Terra First, Inc., concluding that the "only theory of liability alleged against Terra First, Inc. is in respondeat superior for actions or inactions of Danny Redding (deceased) . . . [and that] there is no substantial evidence of culpable conduct on the part of Danny Redding and that judgment is due to be ordered as a matter of law." Then, on March 11, 1993, the circuit court also entered a summary judgment in favor of Danny Redding[6] and Vernon Milling. This judgment, unlike the Terra First judgment, did not state any grounds on which it was based.
The plaintiffs argue that the summary judgment for Redding (or his estate) was not properly entered because, they argue, they were denied adequate and reasonable notice when the trial court entered the summary judgment for Redding without Redding or his estate specifically making a motion for summary judgment. However, Redding, before his death, had timely made a Rule 12(b)(6) motion to dismiss. Rule 12(b), A.R.Civ.P., provides, in part:
 "If, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."
"The requirements of Rule 56 apply to a converted Rule 12(b)(6) motion." Graveman v. Wind Drift Owners' Association,Inc., 607 So.2d 199, 202 (Ala. 1992). The nonmovant must receive (1) adequate notice that the trial court intends to treat the motion as one for summary judgment and (2) a reasonable opportunity to present material in opposition. Id.
As long as the record indicates these requirements were met, notice by the trial court of its intention to treat the motion to dismiss as one for summary judgment need not be made bywritten order. See Hales v. First National Bank of Mobile,380 So.2d 797, 799 (Ala. 1980).
In this case, the evidence does not indicate that the circuit judge ever specifically informed the plaintiffs that Redding's motion to dismiss would be converted to a summary judgment. The circuit judge did grant a hearing on the motions for summary judgment before he ruled, but there is no record of that hearing. However, the plaintiffs responded to the other defendants' motions for summary judgment by submitting the Rinehart and Medina affidavits, which bore on the issue of Redding's alleged negligence, and they made a motion entitled "Plaintiffs' Response to Defendants' Summary Judgment Motion." In this response, the plaintiffs specifically addressed Redding's alleged negligence. This makes it evident that the plaintiffs did have notice that the motion to dismiss would be converted. *Page 493 
Furthermore, the plaintiffs' theory of liability against Vernon Milling and Terra First, respondeat superior, brought Redding's negligence into controversy. Therefore, Terra First and Vernon Milling's summary judgment motions and the plaintiffs' response to the motions (by submitting both affidavits and their written response) encompassed the question of Redding's negligence. This Court has held that where the summary judgment motion "subsumed the evidentiary matters at issue in the pending motion to dismiss [another defendant] and the non-moving party treat[ed] this motion as having this effect," adequate notice was given. Lawson State CommunityCollege v. First Continental Leasing Corp., 529 So.2d 926, 928
(Ala. 1988), overruled on other grounds, Berner v. Caldwell,543 So.2d 686, 688 (Ala. 1989). Thus, it is clear that the plaintiffs did have adequate notice and a reasonable opportunity to respond before the summary judgment was entered.
The plaintiffs also challenge the summary judgment on its merits. A summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P. Once the moving party makes such a prima facie showing, the burden shifts to the non-movant to show by substantial evidence that there exists an issue of fact. Ala. Code 1975, § 12-21-12; Specialty Container Mfg., Inc. v.Rusken Packaging, Inc., 572 So.2d 403 (Ala. 1990). Section12-21-12, Ala. Code 1975, requires proof by "substantial evidence" in order to "submit an issue of fact to the trier of facts."
Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. ofFlorida, 547 So.2d 870, 871 (Ala. 1989).
The plaintiffs submitted three affidavits for the circuit court's review, only two, those of Rinehart and Medina, being relevant to our review. See note 4 and accompanying text. The defendants submitted portions of the deposition of the only surviving eyewitness to the accident, Mr. C.B. Simmons.[7] When reviewing a summary judgment, this Court views the evidence in the light most favorable to the non-movant. Stephens v. City ofMontgomery, 575 So.2d 1095, 1097 (Ala. 1991). Although the affidavits the plaintiffs submitted may have contained inadmissible hearsay or may have contained statements inadmissible in light of the Dead Man's Statute, Ala. Code 1975, § 12-21-163, we see no need to rule on the admissibility of these materials. Even if these affidavits are considered in a light most favorable to the plaintiffs, they present no substantial evidence in support of the claim.
On December 21, 1988, at approximately 1:30 in the afternoon, on a clear day, Simmons saw the car containing Latham and her grandparents enter Highway 82 from Highway 25 and head east on Highway 82. Highway 82 is a four-lane highway at the point where the accident occurred. Simmons was in his car waiting to turn left and travel west on Highway 82 from a Wal-Mart store's parking lot. He watched Latham's car from the time it entered Highway 82 until it had passed the exit of Wal-Mart where Simmons was sitting. According to Simmons, Latham's car passed the Wal-Mart exit where Simmons was, in the outside eastbound lane of Highway 82, and then, 20 feet past the Wal-Mart exit, it crossed the inside eastbound lane and suddenly turned left and entered the inside and then the outside lane of Highway 82 west.[8] *Page 494 
Simmons, after Latham's car had passed him, looked to his right and saw Redding's tractor-trailer in the outside westbound lane of Highway 82. Simmons testified that when he saw the tractor-trailer, the driver had turned his wheels to the right and apparently had applied the brakes. According to Simmons, when Latham's car crossed the westbound lanes of Highway 82, Redding's tractor trailer was approximately 35 to 40 feet away. The tractor-trailer struck the car, making gouge marks in the pavement, and both vehicles traveled 110 feet from the gouge marks to their final resting place. The occupants of Latham's car, including the unborn child Kelly Latham was carrying, were killed. After the action was commenced, Redding died of causes unrelated to the accident.
"It is axiomatic that proof of negligence requires the establishment of a breach of a duty flowing from the defendant to the plaintiff which proximately causes damage to the plaintiff. Sloss-Sheffield Steel Iron Co. v. Allred,247 Ala. 499, 25 So.2d 179 (1945); Williams v. Wicker, 235 Ala. 348,179 So. 250 (1938)." Thompson v. Lee, 439 So.2d 113, 115
(Ala. 1983). The plaintiffs, therefore, must present substantial evidence that Redding breached a duty of care to the occupants of the Latham car. "Proof of an accident and injury alone is . . . generally insufficient to establish negligence." Thompson, 439 So.2d at 115. "In an action to recover for injuries resulting from the operation of a motor vehicle, plaintiff has the burden of proving that defendant, or one for whose conduct he is responsible, was guilty of negligence or other misconduct as alleged, and the burden is not on the defendant so charged." 61 C.J.S. Motor Vehicles
§ 511.2 (1970). "Plaintiff[s have the] burden . . . of proving that a collision was not an unavoidable accident, but was due to defendant's negligence. . . ." Id. at § 519(10).
The plaintiffs failed to meet their burden of submitting substantial evidence to prove that Redding breached a duty of care. The plaintiffs have shown no evidence of wanton conduct by Redding. On the claim of negligence, they failed to present substantial evidence that Redding "did anything a reasonable, prudent person would not do or that he failed to do something that a reasonable, prudent person would have done." See Tinsley v. Henderson, 613 So.2d 1268, 1271 (Ala. 1993). In short, the plaintiffs failed to meet their burden of presenting substantial evidence that this was not an "unavoidable accident" from Redding's point of view.
The plaintiffs attempt to show negligence on the part of Redding by pointing to certain statements in Medina's affidavit. The pertinent part of Medina's affidavit is set forth here:
 "In a statement made by Danny Redding,[9] he stated that he first saw the car as he came over a hill to the east of the collision point. This position is in excess of 1000 feet from the point of collision. Redding also stated that he was traveling approximately 35 MPH at the time of the collision. At 35 MPH, a vehicle is traveling approximately 51 feet per second. A vehicle similar to the vehicle driven by Redding could come to a stop from 35 MPH in a distance of 75-110 feet. This distance does not take into account perception and reaction distance. Perception and reaction distance could add another 60 feet to the stopping distance making a total stopping distance of 135-170 feet. ([N]ote: The truck skidded 110 feet after impact with the car to the final position.)"
The plaintiffs assert in their brief that the speed limit on the portion of Highway 82 where the collision occurred was 35 miles per hour. Although the plaintiffs would have us *Page 495 
draw from the above statement an inference that Redding was speeding, we note that the plaintiffs' own witness did not draw such a conclusion. This evidence is not sufficient to show Redding was speeding. "Speculation and conclusory allegations are insufficient to create a genuine issue of material fact." Brooks v. Colonial Chevrolet-Buick, Inc.,579 So.2d 1328, 1330 (Ala. 1991).
The plaintiffs also attempt to show negligence on the part of Redding by pointing to the following portion of the Rinehart affidavit:
 "I located the driver of the tractor trailer rig at the scene and asked him to tell me how the accident occurred. He told me that he had stopped at Twix and Tween (restaurant) and had come over the rise from there, and had shifted into high gear. He said he was reaching to light his cigarette and when he looked up, the Elam/Latham vehicle was in front of him. When I asked about his speed he was unable to tell me how fast he was going, but only said that he had just shifted into high gear [The word 'gear' is crossed through in the original affidavit and replaced with the word 'side']."
The plaintiffs argue that this mere statement that Redding had shifted into "high gear" or the "high side" of his gear box is sufficient to support an inference that Redding was speeding. Some trucks have a low range and a high range of gears. Chief Rinehart's accident report states that Redding told him he had just shifted out of the "low side" a few moments before he saw Latham's car. The fact that Redding had just shifted into the "high side" of his gear box does not necessarily indicate that the tractor-trailer was traveling at any certain speed. There was no expert testimony as to the range of speed of this vehicle in particular gears. Again, the plaintiffs' evidence is "mere speculation and conclusory allegations." Brooks, 579 So.2d at 1330.
The plaintiffs also argue that Redding was careless, referring to the statement attributed to Redding in Medina's affidavit, a statement that Redding first saw the Latham car when he reached the top of the incline. However, as the defendants point out in their brief, there is no evidence that when Redding saw the car at approximately 1000 feet away its occupants were in any peril. He simply states that he saw the car. This is not substantial evidence of a breach by Redding. Such a "conclusory allegation" does not supply the substantial evidence necessary to defeat a properly supported summary judgment motion. See Brooks, 579 So.2d at 1330.
Also to prove carelessness on the part of Redding, the plaintiffs refer to Redding's statement, as repeated in Rinehart's affidavit, that he looked up from lighting a cigarette and discovered the Latham car in front of him. However, according to Simmons's testimony, the car crossed the path of the tractor-trailer when it was 35 to 40 feet away. This testimony is undisputed by the plaintiffs. As theplaintiffs' expert established, it would have been impossible for Redding to stop within less than 75 feet, so whether he actually looked away from the road is irrelevant.
Although all the parties have argued as to the admissibility of the affidavits submitted by the plaintiffs, it is not necessary to expressly rule on this question. Even if the affidavits were admissible, they do not present substantial evidence of culpable conduct by Redding.
We hold that the plaintiffs failed to submit substantial evidence that Redding acted negligently or wantonly. Because there was no evidence that Redding was negligent, there is no basis for imposing liability on Terra First or Vernon Milling. The plaintiffs only claimed these two defendants were liable under a theory of respondeat superior. Under this theory, a principal is liable for the tort of his agent if the agent commits the tort while acting within the scope of his employment. Merrell v. Joe Bullard Oldsmobile, Inc.,529 So.2d 943 (Ala. 1988). If the agent is not liable for any tort, the principal is also absolved. Therefore, the summary judgment entered as to Terra First, Redding, and Vernon Milling is affirmed.
AFFIRMED. *Page 496 
HORNSBY, C.J., and MADDOX, SHORES, ADAMS, HOUSTON and INGRAM, JJ., concur.
[1] After the death of one of the defendants, Danny Redding, the plaintiffs amended their complaint to substitute for the deceased defendant the estate of Danny Redding, deceased, administered by Charles Elam. Although the record is not clear, we assume Elam was named the administrator of Redding's estate because he was the largest creditor of Redding's estate. See
Ala. Code 1975, § 43-2-42.
[2] "Baby Latham" is the name by which the plaintiffs designated the unborn deceased child Kelly Latham was carrying at the time of her death.
[3] The insurance companies are the uninsured motorist coverage carriers for the plaintiffs' decedents; they are not parties to this appeal. The trial court entered a summary judgment only for Terra First, Vernon Milling, and Redding, and it made that judgment final pursuant to Rule 54(b), Ala.R.Civ.P.
[4] The plaintiffs later submitted another affidavit from Charles Elam, but his affidavit dealt primarily with the condition of the Latham car immediately before the accident, which is not relevant to this appeal.
[5] This affidavit was a statement from Elmer C. Thomas, the president of Vernon Milling Company, concerning whether Danny Redding was engaged in any business on behalf of Vernon Milling at the time of the accident. The issue of Redding's agency is not relevant to this appeal.
[6] The trial judge entered a judgment for "Danny Redding" and not for his estate, although he is now deceased and his estate has been substituted, but no issue regarding this entry was raised on appeal.
[7] The plaintiffs raise another issue in their brief — that a map submitted by certain of the defendants along with Simmons's deposition is incorrectly drawn, but the map is incorrect only as to the placement of the west exit from the Wal-Mart store's parking lot, which had very little to do with portraying the accident scene, because the accident occurred to the east of the east entrance. Thus, the map's evidentiary value is not disputed as to any material fact.
[8] There is a dispute between the parties as to whether a "phantom vehicle" struck Latham's car or whether, as Simmons testified, Latham voluntarily executed a U-turn. However, this dispute relates to the decedent Latham's possible contributory negligence, and not to the issue with which we are specifically concerned, Redding's culpability. Regardless of whether Latham's car was forced into the path of Redding's tractor-trailer or she voluntarily chose this course, the car crossed the path of Redding's tractor-trailer at a specific point. Thus, although the parties have devoted the bulk of their arguments in brief to this question, it is not relevant to our review.
[9] Medina refers to a "statement" made by Danny Redding, but no such statement was before the circuit judge. The record contains a transcript of a telephone conversation between Redding and a Mr. Harry Hodges, but Redding was not under oath when the conversation occurred. These references to statements not in evidence appear to be hearsay and therefore not admissible. Nevertheless, as we stated above, for purposes of this appeal we have considered Medina's affidavit in full, despite its apparent inadmissibility.