**Jessie Ray OTT, as Administrator of the Estate of James Glenn Ott, Plaintiff,**

v.

**The CITY OF MOBILE, etc., Defendants.**

**Nathan Knapp, etc., Plaintiff,**

v.

**The City Of Mobile, etc., Defendants.**

Nos. Civ.A. 98–0635–CB–C, 98–0636–CB–C.

United States District Court, S.D. Alabama, Southern Division.

March 28, 2001.

Dennis Russell Weaver, Charles R. Crowder, Cory, Watson, Crowder & Degaris, Birmingham, AL, for Jessie Ray Ott.

K. Paul Carbo, Jr., Peters, Redditt, Willoughby, Zoghby & Carbo, Mobile, AL, for City of Mobile.

Roderick P. Stout, James B. Rossler, Mobile, AL, for Sam Cochran.

Michael E. Upchurch, Bruce M. Westbrook, Frazer, Greene, Upchurch & Baker LLC, Mobile, AL, for Timothy Gamble.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

BUTLER, Chief Judge.

These consolidated matters are before the Court on the motions for summary judgment filed by the defendant City of Mobile ("the City"). (Knapp Doc. 59; Ott Doc. 56).[1] The parties have filed numerous briefs and evidentiary submissions in support of their respective positions.[2] After careful consideration of these materials and of all other relevant materials in the file, the Court concludes that the City's motion for summary judgment is due to be granted with respect to Knapp and granted in part and denied in part with respect to Ott.

## BACKGROUND

On Mardi Gras night, February 24, 1998, defendant Timothy Gamble was an off duty police officer employed by the City. At the conclusion of a confrontation with several revelers on Dauphin Street in downtown Mobile, Gamble struck Nathan Knapp in the head with his service pistol

---

1. The parties filed identical motions and briefs in each case. Citations to the docket are, unless otherwise noted, to the Knapp docket.

2. The plaintiffs' motions to strike, (Knapp Doc. 80, Ott Doc. 77), are **denied**. Likewise, the City's motions to strike, (Knapp Doc. 86, Ott Doc. 83), are **denied**.

and then shot James Ott in the head, killing him.

The plaintiffs filed five-count complaints naming as defendants Gamble, the City, and Sam Cochran, chief of police. Counts One and Three are directed exclusively against Gamble. Cochran, a defendant under Counts Two and Four, has previously been granted summary judgment. (Doc. 51).

With respect to the City, Count Two seeks to establish municipal liability pursuant to 42 U.S.C. § 1983 for Gamble's alleged violations of the plaintiffs' constitutional rights. As clarified in the plaintiffs' briefs, Count Two seeks to attach liability to the City for: "(1) requiring off-duty officers to carry a firearm while expressly permitting alcohol consumption; (2) inadequate training; and (3) custom or practice of excessive force." (Doc. 68 at 9). Count Four alleges that the City negligently hired and retained Gamble and negligently failed to supervise and train him. Count Five alleges that the City is responsible for Gamble's negligence under Alabama Code § 11–47–190.

## DETERMINATIONS OF UNCONTROVERTED FACT

On the night of February 24, 1998, Gamble was an off duty police officer wearing street clothes and riding in a private vehicle.

## CONCLUSIONS OF LAW

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and 1367. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Federal Rule of Civil Procedure 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). Once the moving party has satisfied its responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH–Siegen,* 965 F.2d 994, 999 (11th Cir.1992) (internal citations and quotations omitted).

## I. Federal Claims.

The City first argues that neither it nor Gamble may be held liable for any constitutional violations pursuant to Section 1983 because Gamble was not acting under color of state law. (Doc. 60 at 7–11).

It is uncontroverted that, at the time of the incident made the basis of this action, Gamble was an off duty police officer, dressed in street clothes and riding in a private vehicle. There is evidence, however, that Gamble stated he was a police officer during or after the initial altercation, that he then returned to his vehicle and retrieved his badge and department-issued firearm, that he displayed both to the plaintiffs, and that he repeatedly iden-

tified himself to the plaintiffs as a police officer before striking Knapp and shooting Ott. There is evidence that Gamble placed the gun in Knapp's chest, ordered him to the ground, and struck Knapp with the weapon when he did not immediately comply. There is evidence that Gamble told Knapp he was a police officer and that he could do any f* * *ing thing he wanted, and that he was going to kill Knapp. There is evidence that he made similar statements to Ott. (Doc. 60, Exhibit 1 at 75, 78, 89, 94; *id.* Exhibit 2 at 7; Doc. 68, Exhibits 8–10).

"A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state," *Almand v. DeKalb County,* 103 F.3d 1510, 1513 (11th Cir.1997), *cert. denied,* 522 U.S. 966, 118 S.Ct. 411, 139 L.Ed.2d 314 (1997), including misuse of power made possible only because the employee is clothed with the authority of state law. *Burrell v. Board of Trustees,* 970 F.2d 785, 790 n. 12 (11th Cir.1992), *cert. denied,* 507 U.S. 1018, 113 S.Ct. 1814, 123 L.Ed.2d 445 (1993). Thus, the mere fact that an officer is off duty and out of uniform does not resolve the color-of-state-law issue. "[T]he lack of outward indicia suggestive of state authority – such as being on duty, wearing a uniform, or driving a patrol car – are not alone determinative of whether a police officer is acting under color of state law." *Revene v. Charles County Commissioners,* 882 F.2d 870, 872 (4th Cir.1989); *see also Almand v. DeKalb County,* 103 F.3d at 1514–15 & 1515 n. 10 (engaging in extended analysis even though the officer was off duty and out of uniform). Rather, the analysis is "intensely fact-specific." *Parrilla–Burgos v. Hernandez–Rivera,* 108 F.3d 445, 449 (1st Cir.1997).

Appellate courts have considered a number of factors in assessing whether an off duty, plainclothes officer acted under color of state law. Among these factors are the officer's flashing of a badge, his display or use of a department-issued weapon, his verbal identification of himself as a police officer, and his arrest of the plaintiff. *See, e.g., Zambrana–Marrero v. Suarez–Cruz,* 172 F.3d 122, 128 (1st Cir. 1999); *Rivera v. LaPorte,* 896 F.2d 691, 695–96 (2nd Cir.1990); *Lusby v. T.G. & Y. Stores, Inc.,* 749 F.2d 1423, 1429–30 (10th Cir.1984), *judgment vacated on other grounds,* 474 U.S. 805, 106 S.Ct. 40, 88 L.Ed.2d 33 (1985); *see also Griffin v. Maryland,* 378 U.S. 130, 135, 84 S.Ct. 1770, 12 L.Ed.2d 754 (1964)(the actions of a privately employed policeman at a private park in ordering blacks to leave, arresting them and initiating prosecutions against them constituted state action where he wore a sheriff's badge and repeatedly identified himself as a deputy sheriff).[3] Indeed, "off-duty police officers who flash a badge or otherwise purport to exercise official authority generally act under color of law." *Bonenberger v. Plymouth Township,* 132 F.3d 20, 24 (3rd Cir.1997).

As noted, there is evidence that Gamble displayed his badge, drew and used his service firearm, and verbally identified himself as a police officer. While there is no evidence that Gamble arrested the plaintiffs or anyone else, the evidence supports a reasonable inference that this was his intent. *See Belcher v. Stengel,* 429 U.S. 118, 120, 97 S.Ct. 514, 50 L.Ed.2d 269 (1976)(dismissing writ as improvidently granted)(Burger, C.J., concurring)(officer's testimony that he "had formed an intention that he would arrest" certain of the plaintiffs "colored the officer's conduct as official"). There is evidence that Knapp

---

**3.** "[T]he concepts of action under color of state law and state action are coterminous." *Almand v. DeKalb County,* 103 F.3d at 1513 n. 7.

and others assaulted Gamble, a violation of state criminal law, *see* Ala.Code § 13A–6–22, and an internal police department investigation concluded that Gamble "would have been justified in attempting an arrest of said individuals." (Doc. 60, Exhibit 15 at 3).[4] When Gamble returned with his gun and badge, he did not fire at Knapp but rather ordered him to drop to the ground, conduct plausibly consistent with immobilizing a suspect incident to arrest. Gamble struck Knapp with the firearm only until Knapp complied with this order.[5]

Moreover, the City repeatedly concluded that Gamble was involved in a "police action." First, an internal police investigation concluded that Gamble "initiated an Off–Duty police action." (Doc. 24, Exhibit 5 at 3). Second, Gamble was brought up on charges and specifications of violating police department rules by initiating a "police action" while off duty and for initiating a "police action" without first properly identifying himself. (*Id.,* Exhibit 2). Third, the hearing officer found Gamble "guilty on all listed charges and specifica-

tions." (Doc. 78, Attachment 2). Gamble was then terminated "[f]or violation, in whole or in part, of cited Mobile Police Department . . . Rules and Regulations." (Doc. 24, Exhibit 3; Doc 60 at 18). A finding by the City that Gamble was engaged in a "police action" is relevant to the color-of-state-law issue. *See Belcher v. Stengel,* 429 U.S. at 120, 97 S.Ct. 514 (Burger, C.J., concurring)(a determination by state officials that the police officer defendant was acting in the line of duty was "important evidence of state action").

█ In addition, Gamble's statements that he was a police officer and could do whatever he wanted are arguably consistent with action taken under color of state law. *See United States v. Tarpley,* 945 F.2d 806, 808, 809 (5th Cir.1991)(the defendant's statement to the plaintiff that he could kill him and get away with it because he was a cop supported a finding that he acted under color of state law because, through these statements, the defendant "claimed to have special authority for his

---

**4.** The City argues that Gamble was not authorized to effect an arrest because police department rules instructed off duty officers not to take action in the event of a misdemeanor unless the officer or other citizens were in immediate danger. (Doc. 68, Exhibit 7). Assuming, despite the police department's internal investigative finding, that Gamble did not act in accordance with this policy, "[a]cts of officers who undertake to perform their official duties are included [as taken under color of state law] whether they hew to the line of their authority or overstep it." *Screws v. United States,* 325 U.S. 91, 111, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945).

**5.** In his unsworn statement given to police shortly after the incident, Gamble stated that his intention was to apprehend Knapp and Ott and to arrest them for assault. (Doc. 68, Exhibit 1 at 9). The City, however, objects that only sworn testimony provided by deposition or affidavit may be considered on motion for summary judgment. (Doc. 70 at 2). In fact, "[s]ummary judgment may be based on

any evidence which would be admissible at trial." *United States v. Jones,* 29 F.3d 1549, 1552 (11th Cir.1994). Because other record evidence is sufficient to create a genuine issue of material fact as to whether Gamble intended to arrest the plaintiffs and as to whether he acted under color of state law, it is unnecessary to consider whether Gamble's unsworn statement would be admissible at trial. Similarly, it is unnecessary to resolve whether the statement, even if inadmissible at trial, is admissible on motion for summary judgment under the principle that "otherwise admissible evidence [may] be submitted in inadmissible form at the summary judgment stage, though at trial it must be submitted in admissible form." *McMillian v. Johnson,* 88 F.3d 1573, 1584 (11th Cir.1996), *aff'd,* 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997); *accord Pritchard v. Southern Company Services,* 92 F.3d 1130, 1135 (11th Cir.), *amended on other grounds,* 102 F.3d 1118 (11th Cir. 1996), *cert. denied,* 520 U.S. 1274, 117 S.Ct. 2453, 138 L.Ed.2d 211 (1997).

actions by virtue of his official status"), *cert. denied,* 504 U.S. 917, 112 S.Ct. 1960, 118 L.Ed.2d 562 (1992).[6]

The cases cited by the City are not persuasive. In *Huffman v. County of Los Angeles,* 147 F.3d 1054 (9th Cir.1998), *cert. denied,* 526 U.S. 1038, 119 S.Ct. 1333, 143 L.Ed.2d 498 (1999), the off duty officer shot and killed the plaintiffs' decedent during a drunken barroom brawl. Unlike in this case, the defendant never identified himself as a police officer, never issued any commands, and was carrying his personal firearm, not a department-issued weapon. *Id.* at 1056, 1058. Nor was any evidence presented that the defendant attempted or intended to arrest the decedent.

▮ In *Barna v. City of Perth Amboy,* 42 F.3d 809 (3rd Cir.1994), two off duty officers assaulted the plaintiff after witnessing what they believed was an assault on one officer's sister. Unlike in this case, the officers did not identify themselves as police officers and did not try to indicate they were acting on official police business (they were outside their jurisdiction). *Id.* at 818. Nor did they attempt to arrest the plaintiff or otherwise invoke their police authority. *Id. Barna* in fact expressly confirms that "off-duty police officers who purport to exercise official authority will generally be found to have acted under color of state law. Manifestations of such pretended authority may include flashing a badge, identifying oneself as a police officer, [or] placing an individual under arrest...." *Id.* at 816.

Finally, in *Almand v. DeKalb County,* the defendant officer, after having been ejected from the plaintiff's apartment, broke down the apartment door and raped the plaintiff, without employing any police-issued weapon or identification and without asserting any police business or authority. 103 F.3d at 1512, 1514–15.

The Court does not rule that Gamble was in fact acting under color of state law. The Court concludes only that the City's cursory treatment of the issue is inadequate to establish the absence of a genuine issue of material fact and the City's entitlement to judgment as a matter of law.

### A. Failure to Train.

The Knapp complaint alleges that the City failed to instruct Gamble "in his duties to refrain from unlawfully and maliciously assaulting and beating citizens, using a loaded handgun as a club and otherwise using unreasonable and excessive force before, during or after the making of an arrest" and "in the correct procedure for making an arrest and the safe and proper use of city issued weapons." (Doc. 1 at 4–5).[7] On motion for summary judgment, the plaintiffs characterize this claim as directed to training "regarding the use of force, the use of deadly force, arrest and detention of suspects and prohibited uses of firearms." (Doc. 68 at 10, 23).

▮ A claim against a municipality for failure to train its police officers encompasses at least three elements: (1) "whether [the City's] training program is adequate"; (2) "whether such inadequate

---

6. The City finds it important that Knapp "did not believe Gamble was a police officer." (Doc. 60 at 9). In fact, Knapp testified only that he did not believe Gamble was a police officer before Gamble displayed his badge. (Doc. 60, Exhibit 1 at 76). At any rate, "[a]lthough the subjective reactions of the victim may have some relevance, 'the primary focus of the color of law analysis must be on the conduct of the police officer' ... and whether

it 'related in some meaningful way either to the officer's governmental status or to the performance of his duties.'" *Zambrana–Marrero v. Suarez–Cruz,* 172 F.3d at 126 (quoting *Barreto–Rivera v. Medina–Vargas,* 168 F.3d 42, 47 (11th Cir.1999) and *Martinez v. Colon,* 54 F.3d 980, 987 (1st Cir.1995)).

7. The Ott complaint differs only in referencing the firing of weapons. (Ott Doc. 1 at 4).

training can justifiably be said to represent 'city policy'"; and (3) whether "the identified deficiency in a city's training program [is] closely related to the ultimate injury." *City of Canton v. Harris,* 489 U.S. 378, 390, 391, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Addressing the first element, the City argues that it adequately trains its officers. (Doc. 60 at 13). As discussed below, the plaintiffs have failed to raise a genuine issue of material fact to the contrary.

The plaintiffs acknowledge that Gamble successfully completed the training required of all police officer candidates, but complain that he "did not have a working knowledge of the general orders of the Mobile Police Department or of the basic and standard police procedures regarding use of force, use of deadly force, arrest and detention of suspects and prohibited uses of firearms." (Doc. 68 at 23). Assuming this to be so, however, it is beside the point. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton v. Harris,* 489 U.S. at 390–91, 109 S.Ct. 1197. Thus, "[i]n resolving the issue of a city's liability, the focus must be on the adequacy of the training *program* ...." *Id.* at 390, 109 S.Ct. 1197 (emphasis added). A "program" as used in *City of Canton* is "necessarily intended to apply over time to multiple employees." *Bryan County Commissioners v. Brown,* 520 U.S. 397, 407, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

The plaintiffs identify no deficiency in the City's training *program.* On the contrary, their expert acknowledges that the City's field training officer program "[o]n paper ... is a very good program" and that Gamble's extensive training file does not indicate that Gamble, who successfully completed the program, was improperly trained. (Doc. 69, Exhibit 17 at 111–13). Under *City of Canton,* the plaintiff's objection that this adequate training program for some reason did not "take" with Gamble provides an insufficient basis on which to ground the City's liability for failure to train.

Plaintiffs in other cases, relying on *City of Canton,* have argued that a known history of constitutional violations establishes the second element of a failure-to-train claim, that is, the existence of a custom or policy of deliberate indifference. Assuming without deciding that such a history may similarly be used to establish that a training program that otherwise appears adequate is in fact inadequate, the plaintiffs have failed to create a genuine issue of material fact as to any such history.

"It could also be that the police, in exercising their discretion, *so often violate* constitutional rights that the need for further training must have been plainly obvious to city policymakers ...." *City of Canton v. Harris,* 489 U.S. at 390 n. 10, 109 S.Ct. 1197 (emphasis added). Accordingly, the Eleventh Circuit has recognized that the relevant history must be composed of *actual* violations that have occurred with a *sufficient frequency.*

With respect to merit, "[q]uite simply, there is no evidence that city officials were aware of past police misconduct. [citations omitted] Brooks never demonstrated that past complaints of police misconduct had any merit. Indeed, the number of complaints bears no relation to their validity .... *Brooks was obligated to produce some evidence that the complaints against Scheib had some merit ....*" *Brooks v. Scheib,* 813 F.2d 1191, 1193, 1195 (11th Cir.1987)(emphasis added).[8] With

---

8. Although *Brooks* preceded *City of Canton,* it employed a consistent "deliberate indiffer-

respect to frequency, "the need for more or better training may be obvious where a *pattern* of constitutional violations exists such that the municipality knows or should know that corrective measures are needed." *Young v. City of Augusta,* 59 F.3d 1160, 1172 (11th Cir.1995) (emphasis added); *accord Wright v. Sheppard,* 919 F.2d 665, 674 (11th Cir.1990)(absent "a history of *widespread* prior abuses," the defendant could not be liable for failure to train) (emphasis added).[9]

The plaintiffs cannot satisfy the "so often violate" standard. Their figures, which are not challenged by the City, reflect 56 formal complaints of excessive force lodged in the 18 months preceding the incident at issue and 162 such complaints in the five calendar years preceding the incident. (Doc. 77 at 2–4). According to the plaintiffs, only one of 56 complaints, and six of 162, were found to be meritorious, (*id.* at 2–4), and the plaintiffs offer no independent evidence that other complaints were also meritorious. Ignoring the two complaints that involved officers' domestic disputes with their spouses, as the plaintiffs insist is appropriate, (*id.* at 32), they have provided evidence of only four meritorious complaints of excessive force in a five-year period, only two of them within the four years preceding the incident at issue. These figures are insufficient as a matter of law to create a genuine issue of material fact as to the existence of a custom or policy of deliber-

ate indifference and are similarly insufficient to raise a fact issue as to the adequacy of the City's training program.

The plaintiffs' failure to create a fact issue as to the adequacy of the City's training program dooms their claim for failure to train. Rather than defending this claim as pleaded, the plaintiffs ultimately argue that it is subsumed within their claim for "custom or policy of excessive force." (Doc. 77 at 17). The Court thus turns its attention to this claim.

### B. Custom or Policy of Excessive Force.

As noted, the plaintiffs have provided evidence of only four meritorious complaints of excessive force in the five calendar years preceding February 24, 1998 and only two in the four years preceding the incident. In the face of these unimpressive figures, the plaintiffs advance the "theory ... that the City of Mobile was knowingly and deliberately indifferent to the possibility that its police officers had a propensity towards use of excessive force, and that this indifference was demonstrated by the failure of the city defendants to exercise reasonable care in investigating claims of police brutality in order to supervise police officers in the proper use of force." (Doc. 77 at 10).

In *Vineyard v. County of Murray,* 990 F.2d 1207 (11th Cir.), *cert. denied,* 510 U.S. 1024, 114 S.Ct. 636, 126 L.Ed.2d 594

---

ence" analysis, and its reasoning was expressly reaffirmed in *Gold v. City of Miami,* 151 F.3d 1346, 1351 (11th Cir.), *cert. denied,* 525 U.S. 870, 119 S.Ct. 165, 142 L.Ed.2d 135 (1998).

9. The plaintiffs identify only one case for the proposition that the sheer volume of past complaints, regardless of their merit, may be relied on to support a failure-to-train claim. However, *Fiacco v. City of Rensselaer,* 783 F.2d 319 (2nd Cir.1986), *cert. denied,* 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987),

was decided before the *City of Canton* Court announced the "so often violate" standard. Moreover, the plaintiff in *Fiacco* did not simply introduce written complaints of excessive force but called to the witness stand the majority of the complainants, allowing the jury to assess the validity of the complaints. *Id.* at 329. To the extent *Fiacco* truly stands for the proposition the plaintiffs assign to it, it is inconsistent with Supreme Court and Eleventh Circuit precedent by which this Court is bound.

(1993), the plaintiff, a pretrial detainee allegedly beaten by deputies while chained to a hospital bed, sought to impose liability on the county based on failure to train, supervise or discipline its deputies concerning excessive force. There was evidence that the sheriff's department: (1) had no policies and procedures manual addressing the use of force; (2) allowed the dispatcher to decide how to initially handle complaints of excessive force; (3) did not log or record complaints of excessive force; (4) assigned accused officers to investigate a complaint of excessive force lodged against them; and (5) failed to complete a report concerning the complainant's arrest. On these facts, the Court held there was substantial evidence of inadequate policies of training, supervision and discipline sufficient to establish the county's deliberate indifference. *Id.* at 1208, 1212.

None of the facts on which the *Vineyard* Court relied is, or is alleged to be, present in this case. Indeed, the only fact even arguably common to both concerns the quality of the departments' investigations. With respect to this factor, the Eleventh Circuit has described the Murray County sheriff's assignment of the accused officers to investigate the complaint against them as tantamount to "not investigating the complaints." *Gold v. City of Miami,* 151 F.3d 1346, 1353 (11th Cir.)(discussing *Vineyard* in another case alleging a complete failure to investigate citizen complaints), *cert. denied,* 525 U.S. 870, 119 S.Ct. 165, 142 L.Ed.2d 135 (1998). The plaintiffs here do not assert that the City has historically failed to investigate claims of excessive force at all [10] but rather that it has failed to "exercise reasonable care" in conducting its investigations. (Doc. 77 at 10).

The plaintiffs rely on two cases from other jurisdictions for the proposition that a practice of *inadequate* investigation of excessive force complaints, and not just one of *non*-investigation as in *Vineyard* and *Gold,* can provide a sufficient basis for establishing a custom or policy of deliberate indifference. *See Beck v. City of Pittsburgh,* 89 F.3d 966 (3rd Cir.1996), *cert. denied,* 519 U.S. 1151, 117 S.Ct. 1086, 137 L.Ed.2d 219 (1997); *Fiacco v. City of Rensselaer,* 783 F.2d 319 (2nd Cir.1986), *cert. denied,* 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987). The plaintiffs devote much of their supplemental brief to a critical analysis of alleged deficiencies in several of the City's investigations. (Doc. 77 at 21–27).

It is unnecessary for the Court to consider whether the Eleventh Circuit would expand *Vineyard* and *Gold* to reach actual but inadequate investigations. It is further unnecessary to consider what standard of "inadequacy" the Eleventh Circuit might adopt, how frequent or pervasive the occurrence of inadequate investigations it might require, or how it might insist the inadequacy be proved. Regardless of how the Eleventh Circuit might structure an analysis for determining the existence of a custom or policy of deliberate indifference based on inadequate investigation of citizen complaints of constitutional violations, it has already established the standard that must be met to show that any such custom or policy *caused* the constitutional violation of which the plaintiff complains.

The plaintiff in *Gold* argued that "the City's failure to investigate false arrest complaints raises a jury issue regarding whether the City was deliberately indifferent to an obvious need to supervise its police officers." 151 F.3d at 1353. In response, the Court held that, "because

---

**10.** Far from it, the plaintiffs have submitted copies of the City's investigative files, which fill a box 18 inches long.

Gold presented no evidence of a prior false arrest for disorderly conduct or even a valid complaint of such false arrest, there is no showing that the City's procedures for handling false arrest complaints affected the officers' conduct here." *Id.* Under *Gold,* therefore, a plaintiff cannot establish that a city's deficient or non-existent investigation of excessive force complaints caused the officer's unconstitutional use of force without first establishing that at least some of the inadequately investigated complaints were in fact valid.

As noted previously, the plaintiffs have introduced no evidence to show the validity of any unsustained complaint of excessive force. Simply dumping several thousand pages of investigative files on the Court, as the plaintiffs have done, cannot establish a genuine issue of material fact as to whether excessive force was used in any case, and the plaintiffs have offered no testimony from any complainant or other witness to supply the deficiency.[11]

Accordingly, because the plaintiffs cannot establish the essential element of causation, the defendants' motion for summary judgment is due to be granted.

### C. Firearms and Alcohol.

The City has a formal policy requiring off duty officers to carry a firearm. (Doc. 68, Exhibit 3). The City has another formal policy prohibiting off duty officers subject to department recall or mobilization from consuming alcohol to an extent that would render them incapable of proper performance if called to duty. (*Id.,* Exhibit 4). The plaintiffs argue that these policies allow off duty police officers to drink and require them to carry firearms while doing so. The plaintiffs further argue that these policies were the "moving force" behind Gamble's allegedly unconstitutional actions. (*Id.* at 19–22).

"Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, *unconstitutional* municipal policy, which can be attributed to a municipal policymaker.... But where the policy relied on is not itself unconstitutional, considerably more proof than the single incident will be necessary *in every case* to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)(four-Justice plurality)(emphasis added); *accord Young v. City of Augusta,* 59 F.3d 1160, 1172 (11th Cir.1995); *Schmelz v. Monroe County,* 954 F.2d 1540, 1544 (11th Cir.1992).

The plaintiffs have not asserted, much less established, that the City's firearms and alcohol policies, separately or in tandem, are themselves unconstitutional. Accordingly, to establish either fault or causation, they must show "considerably more" than that Gamble's conduct was consistent with, or even pursuant to, these policies. The only thing "more" the plaintiffs offer is that the City was aware that police officers have engaged in excessive drinking while carrying firearms, in violation of City policy, yet the City has never disciplined an officer for doing so. (Doc. 68 at 20). As discussed in preceding sections, however, to establish either fault or causation flowing from a city's failure to investigate or discipline breaches of policy by its police officers, the plaintiff must show that prior breaches of policy resulted in constitutional violations. *See, e.g., Gold v. City of Miami,* 151 F.3d at 1351, 1353. Here, as the City points out, the plaintiffs

---

11. While the four sustained complaints may be taken as showing that excessive force was

in fact used, an investigation that makes such a finding cannot be considered inadequate.

have no evidence that a police officer's drinking, excessive or not, has ever resulted in an unconstitutional – or even constitutional – use of force.

The plaintiffs have offered, and the Court has located, no authority for the proposition that a city's failure zealously to enforce a constitutional policy, so as to raise a hypothetical possibility that its officers may employ unconstitutional force, may establish either deliberate indifference or proximate cause absent a prior actual constitutional violation. The plaintiffs' evidence does not satisfy the "rigorous standards of culpability and causation" required for municipal liability under Section 1983. *Bryan County Commissioners v. Brown,* 520 U.S. at 405, 117 S.Ct. 1382.

## II. State Claims.

### A. Negligent Hiring, Retention, Training and Supervision.

Count Four alleges that the City negligently hired and retained Gamble and negligently failed to train and supervise him. The City argues that the plaintiffs have no evidence that the City knew or should have known of any incompetency of Gamble, a necessary element of such a claim. (Doc. 60 at 18–19). The plaintiffs respond that "the plaintiffs' claims are not based directly upon the negligence of a master or employer" but on the negligence of City employees in their training and supervision of Gamble. (Doc. 68 at 27–28).[12] Thus, conclude the plaintiffs, the claim fits comfortably within Alabama Code § 11–47–190, which generally allows a plaintiff

to sue a municipal defendant for the negligence of its employee.[13]

 Municipal liability under Section 11–47–190 is based on the doctrine of respondeat superior. *E.g., City of Lanett v. Tomlinson,* 659 So.2d 68, 70 (Ala.1995). For the employer to be liable under that doctrine, the employee must first be liable for a tort. "If the agent is not liable for any tort, the principal is also absolved." *Latham v. Redding,* 628 So.2d 490, 495 (Ala.1993). Thus, to survive a motion for summary judgment, a plaintiff must first show that a species of tort exists for which the employee may theoretically be held liable. In this case, the plaintiffs must show that Alabama law recognizes a cause of action against a supervisory employee for the negligent training or supervision of a subordinate.

 The plaintiffs have identified, and the Court has located, no authority for the proposition that such a cause of action exists. *Cf. Machen v. Childersburg Bancorporation,* 761 So.2d 981, 986–87 (Ala. 1999)(where the supervisory employee defendants did not question the existence of a cause of action, neither did the Court); *Nabors v. Transouth Financial Corp.,* 928 F.Supp. 1085, 1088–89 (M.D.Ala.1996)(concluding, for the limited purpose of finding that the joinder of a non-diverse supervisor was not a fraudulent effort to defeat federal jurisdiction, that it is not "beyond doubt" that a supervisor may not be sued for negligent supervision of a subordinate). The Court is satisfied that no such cause of action exists.[14]

---

**12.** The plaintiffs have thereby abandoned the negligent hiring and retention aspects of Count Four.

**13.** The plaintiffs' argument appears to depend on a creative recasting of their complaints. Count Four expressly alleges that *the City* negligently hired and retained Gamble and that *the City* negligently trained and supervised him. This is the language of direct

liability for one's own negligence, not of vicarious liability for the negligence of another. Moreover, in stark contrast to Count Five, Count Four contains no reference to Section 11–47–190.

**14.** None of the cases cited by the *Nabors* Court as arguably suggesting that such a cause of action may exist in fact supports

 Alabama law is clear that the tort of negligent supervision or training requires as an element the existence of a master-servant relationship. "We are mindful of ... the fact that this Court recognizes a cause of action *against the master* based upon the incompetence of the servant." *Lane v. Central Bank, N.A.,* 425 So.2d 1098, 1100 (Ala.1983)(emphasis added); *accord Big B, Inc. v. Cottingham,* 634 So.2d 999, 1002–03 (Ala.1993). A supervisor is not the master of a subordinate, nor is the subordinate the servant of the supervisor; rather, as Alabama cases make plain, the status of "master" is restricted to one who is actually or essentially the employer of the servant. *E.g., Tyson Foods, Inc. v. Stevens,* 783 So.2d 804, 807–08 (Ala.2000)(a contractor becomes the master of a subcontractor by retaining sufficient right to control the manner in which the subcontractor works); *Hauseman v. University of Alabama Health Services Foundation,* 793 So.2d 730, 735–36 (Ala.2000)(using "master" interchangeably with "employer").[15] Indeed, the plaintiffs recognize as much, admitting that their theory does not depend on negligence of the "employer or master" but of a supervisor. (Doc. 68 at 27). Accordingly, because Alabama recognizes no cause of action against a supervisor for negligent failure to supervise or train a subordinate, Count Four is due to be dismissed.

 As the City notes, the liability of an employer for negligent supervision or training requires, among other elements, proof of the employer's actual or constructive awareness of the employee's incompetency. *E.g., Big B v. Cottingham,* 634 So.2d at 1002. Even if Alabama recognized a cause of action against a supervisor for negligent supervision or training of a subordinate, the plaintiffs have advanced no basis for believing that this same element would not obtain. Because the City has pointed out that the plaintiffs have no evidence of this element, and because the plaintiffs have not identified any such evidence, Count Four is due to be dismissed on this ground as well.

### B. Respondeat Superior.

Count Five alleges that Gamble and Cochran were negligent and that the City is liable for their negligence under Alabama Code § 11–47–190. As noted in Part II.A, Section 11–47–190 codifies the doctrine of respondeat superior, such that the City may be liable only if its employee is liable. The only negligence of which Cochran is accused is the negligent hiring, retention, training and supervision of Gamble. Because, as discussed in Part II.A,

such a proposition. The supervisory defendants in *Nance ex rel. Nance v. Matthews,* 622 So.2d 297 (Ala.1993) and in *Phillips v. Thomas,* 555 So.2d 81 (Ala.1989), were governmental employees and were able to establish discretionary function immunity, mooting any issue of whether a cause of action existed. The Court in *Doe v. Swift,* 570 So.2d 1209 (Ala.1990), involved no claim of negligent supervision and merely explained, in a far different context, the ruling in a Fourth Circuit case. *Id.* at 1212.

**15.** The *Nabors* Court construed Alabama Code § 6–11–27(a), which allows the award of punitive damages against "[a] principal, employer, or other master" in a negligent supervision case, as "reasonabl[y]" susceptible to a construction that a supervisory employee is a master that may be sued for negligent supervision. 928 F.Supp. at 1088. In fact, however, the negligent employment torts are judicial creatures, not legislative ones, and the Alabama Code explicitly states that "[n]othing contained in this article [including Section 6–11–27(a)] shall be construed to grant or create a cause of action...." Ala. Code § 6–11–28. Nor does Section 6–11–27(a) bear any indication that the Alabama Legislature used the term "master" other than in its common law sense which, as noted in text, does not encompass supervisory employees.

Alabama recognizes no such cause of action against Cochran, he cannot be liable for negligence and the City cannot be vicariously liable for his negligence. Accordingly, the viability of Count Five depends on the alleged actions of Gamble only. The parties assume as much in their briefs.

 "No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty...." Ala.Code § 11–47–190. As the City notes, Section 11–47–190 permits a cause of action against the City for Gamble's conduct only to the extent it was negligent; claims based on his intentional or wanton misconduct may not be maintained. *E.g., Cremeens v. City of Montgomery,* 779 So.2d 1190, 1200–01 (Ala.2000); *Town of Loxley v. Coleman,* 720 So.2d 907, 909 (Ala.1998); *Hilliard v. City of Huntsville,* 585 So.2d 889, 891 (Ala. 1991). The City argues that "the evidence presented by Nathan Knapp is that Gamble intentionally hit him and shot James Ott." (Doc. 60 at 19).[16]

 Knapp's deposition reflects that Gamble intentionally hit Knapp with his pistol, (Doc. 60, Exhibit 1 at 89), and the plaintiffs have identified no evidence that the blows Gamble delivered to Knapp were not intentional.[17] Knapp's claim under

Count Five is therefore due to be dismissed. With respect to Ott, however, the record evidence would support an inference that Gamble's shooting of Ott was either intentional, wanton or negligent and is therefore sufficient to defeat the City's motion for summary judgment on this ground.[18]

 The City suggests that, even if a jury could find that Gamble acted negligently in shooting Ott, it is entitled to immunity under Alabama Code § 6–5–338. (Doc. 60 at 5).

> Every peace officer ... whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged ... with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability *arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.*

Ala.Code § 6–5–338(a)(emphasis added).

Although subsection (a) addresses only the immunity of peace officers themselves, subsection (b) states that "[t]his section is intended to extend immunity only to peace

---

**16.** The City makes no argument that Gamble was not "engaged in work" for the City and/or was not "acting in the line of his ... duty."

**17.** The plaintiffs make no effort to salvage Knapp's claim under Count Five, limiting their argument to Ott. (Doc. 68 at 28).

**18.** The plaintiffs argue that Gamble's unsworn statement, given to police the night of

the incident, reflects that the shooting was accidental. (Doc. 68 at 28). The City again objects that only sworn testimony provided by deposition or affidavit may be considered on motion for summary judgment. (Doc. 70 at 2). Again, the existence of other record evidence sufficient to create a genuine issue of material fact obviates discussion of the admissibility of Gamble's statement on motion for summary judgment. *See* note 5, *supra.*

officers *and governmental units or agencies authorized to appoint peace officers."* Ala.Code § 6–5–338(b)(emphasis added). The Alabama Supreme Court has construed "the plain language" of-subsection(b) as "extend[ing] that discretionary-function immunity to the City." *Ex parte City of Gadsden,* 781 So.2d 936, 940 (Ala. 2000); *accord Ex parte City of Montgomery,* 758 So.2d 565, 569–70 (Ala.1999).

The plaintiffs argue that the City is not entitled to this statutory immunity because Gamble was not performing a discretionary function. In particular, they argue that Gamble acted in violation of four police department rules: (1) prohibiting off duty officers from taking police action on a misdemeanor; (2) prohibiting the use of a firearm as a club; (3) prohibiting the use of deadly force when no life is threatened or in danger of serious harm; and (4) prohibiting off duty officers from drinking to the point of impairment. (Doc. 68 at 28–29). The City, which offered no discussion of its immunity argument in its principal brief, likewise offers no response to the plaintiffs' argument in its reply briefs.

 Section 6–5–338 essentially codifies the common law doctrine of discretionary function immunity, and Alabama courts have borrowed freely from that doctrine in interpreting its statutory counterpart. *See, e.g., Moore v. Adams,* 754 So.2d 630, 632 (Ala.1999); *Montgomery v. City of Montgomery,* 732 So.2d 305, 310–11 (Ala. Civ.App.1999). Discretionary functions, both at common law and under the statute, are " 'those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances.' " *Ex parte City of Montgomery,* 758 So.2d at 569 (quoting *Wright v. Wynn,* 682 So.2d 1,

2 (Ala.1996)). Even if this test is satisfied, discretionary function immunity will not attach to "acts taken in bad faith, or willful and malicious conduct." *Id.*

 A statute may eliminate an officer's discretion to act in a particular manner. *See Williams v. Crook,* 741 So.2d 1074, 1077 (Ala.1999)(statute eliminated the defendant officer's discretion to operate a police vehicle over the maximum speed limit without using his siren and blue lights); *Newton v. Town of Columbia,* 695 So.2d 1213, 1217 (Ala.Civ.App.1997) (officer had no discretion to apply force against a citizen outside of the statutory police jurisdiction). Similarly, police department rules may eliminate the officer's discretion. *See Ex parte City of Gadsden,* 781 So.2d 936, 938–40 (because police department policies and procedures manual granted the defendant officer discretion whether to remain at an accident scene or to pursue a—fleeing DUI suspect, the officer "was faced with a situation for which there was no hard and fast set of rules.").

The Mobile police department's General Order 1.3 reads in pertinent part as follows: "IV. Prohibitive Uses and Display of Firearms.... 5. Firearms shall not be used as a club ... or for any purpose other than for which it is designed and intended." (Doc. 68, Exhibit 6 at 1–10). Because General Order 1.3 imposes a ban on using a firearm to strike a person, it appears to establish a "hard and fast rule as to the course of conduct that one ... must not take," to eliminate any "exercise in judgment and choice," and thus to rob Gamble's conduct of "discretionary function" status.[19] The City, which has offered no argument or analysis in support of its immunity claim, has failed to establish that it is entitled to judgment as a matter of law.

---

**19.** It is therefore unnecessary to consider whether the other police department rules cited by the plaintiffs similarly stripped Gamble of discretion to act as he did.

## CONCLUSION

For the reasons set forth above, the City's motion for summary judgment with respect to plaintiff Knapp is **granted** in its entirety. The City's motion for summary judgment with respect to plaintiff Ott is **denied** with respect to Ott's claim under Alabama Code § 11–47–190 as expressed in Count Five. In all other respects, the City's motion for summary judgment with respect to plaintiff Ott is **granted**.

It is so **ORDERED**.